THE MECHANICS AND WORKING MEN'S MUTUAL SAVINGS BANK AND BUILDING ASSOCIATION OF NEW HAVEN *vs.* WILCOX AND OTHERS.

The act " authorizing the establishment of savings and building associations," passed in 1850, does not exonerate all contracts, made by such associations with their members, from the operation of the statute, relating to usury.

The term bonus, in such act, imports a definite sum, to be paid at one time, for a loan of money for a specified period, distinct from, and independently of, the interest.

The act of 1855, providing that the bonus on loans, made to the stockholders in such associations, shall, in no case, exceed twenty-five per cent. on the amount loaned, has no effect upon contracts, which were made under the act, passed in 1850.

A member of an association, organized under the act of 1850, gave to such association his promissory note for the payment of $6,000, with interest, and a bonus of three-fourths of one per cent. per month, in addition to the interest, both interest and bonus payable monthly, in advance. Held, That such note was not entirely void, but was usurious, both in respect to that part of it denominated a bonus, and to the interest.

Where the borrower, for the purpose of obtaining a loan of money from such association, became a member and stockholder thereof; it was held, that the fact of his not being liable to the full extent of his contract for such loan, did not affect his rights, or his liability as a stockholder.

THIS was a bill to foreclose mortgaged premises. The cause came on, for hearing, before the superior court for New Haven county, at the October term, 1854, when that court made a special finding, and reserved the case for the advice of this court. The material facts, thus found, are the following.

The plaintiffs were duly organized, under the statute, entitled, " An act, authorizing the establishment of savings and building associations," passed in 1850, and adopted their constitution.

The defendant, Wilcox, in July, 1853, became a member of the association, and subscribed for thirty shares of their stock. The plaintiffs thereupon loaned him $6,000, for

which he executed and delivered to them his promissory note, dated July 6th, 1853, by which he promised to pay them, on demand, six thousand dollars, with interest, and a bonus of three-fourths of one per cent. per month, in addition to the interest, both interest and bonus payable monthly in advance, at their banking-house. And to secure the payment of the note, he executed to them a mortgage of certain real estate. The other defendants were claimants of subsequent liens.

Wilcox, at the time of executing the note and mortgage, subscribed for the stock, and signed the constitution, for the purpose of enabling him to obtain the loan. At the time of making it, there was deducted from the gross amount, $60 for two months' installments upon the stock, $14 for interest, and $21 bonus, up to the next monthly meeting, on the third Wednesday of July, and the balance, $5,905, was paid him, in cash. He continued paying his installments, $210, interest, $164, and bonus, $246, amounting in the whole to. $620, up to the third Wednesday of December, 1853, when he ceased making further payments.

The only material provisions in the constitution are the following.

A share of stock was to be $200, payable in monthly installments of one dollar on each share; the first, at the time of subscribing, and the subsequent ones, on the third Wednesday of every month.

Whenever the intrinsic value of a share amounted to $200, the holder ceased to be a member, and became entitled to the amount of his share.

Each stockholder was entitled to a loan for each share of his stock, (when the state of the funds admitted,) of the sum of $200, provided sufficient security was given on real estate.

By an amendment of the constitution, adopted February 22, 1854, it was provided that the rate of interest, on all loans, should be one-half of one per cent. per month, and the

rate of bonus not to exceed three-fourths of one per cent. per month, on all permanent loans, to be paid monthly, with the monthly installments on stock.

*Ives* and *Blackman*, for the plaintiffs.

The agreement, between the parties, in this case, to give and take a monthly bonus, is warranted by the third section of the act of 1850, which authorizes the establishment of savings and building associations.

I. That the legislature intended to establish a monthly bonus, is apparent from the language used; the phrase, "such a bonus," covers the amount of it, and the mode and time of its payment. A bonus differs from interest only in name. Like interest, it is something paid for the use of money, and its amount depends upon the responsibility of the borrower, the security offered, the amount of the loan, and the time it has to run. The intention of the legislature appears also from its acts since the law was passed.

In pursuance of the requirements of the legislature, the bank commissioners made their report in May, 1854, and stated that, " in some of the institutions, the bonus is payable monthly, in advance," which report was accepted, and approved, by the legislature.

The legislature of 1855, sanctioned the principle of the monthly loans, by an act passed, in addition to, and alteration of, the act, "authorizing the establishment of savings and building associations," which provides that " no bonus shall be taken on any temporary loan, exceeding one-half of one per cent. per month."

The intention of the legislature may be inferred from the interpretation, which has been put upon their language. From the report of the bank commissioners, in 1855, it appears that thirty-three institutions take their bonus monthly, in advance; eleven take it all at once, and the practice in three is not given.

The object of the law of 1855, was evidently to allow

persons to associate together, and take, and pay, as much as they pleased, for the use of their common money, provided they all shared in the earnings of the money, in proportion to their interest.   This is accomplished whether the bonus is paid by monthly installments, or all at once.

II. The monthly bonus is the most accurate, simple, just and equitable ; the other system is deceptive, as well as impracticable.

Upon the monthly system of receiving a bonus, the accounts go along *pari passu*, and show the actual earnings for the current time ; whereas, when the whole bonus is prepaid, it runs forward and laps on to subsequent years, and is incapable of an equitable division, as affecting incoming subscribers to stock.

III. Public policy, the safety and security of a very large amount of invested capital, and the pecuniary interests of thousands of the citizens of this state, demand that the monthly bonus system shall be sustained, and this reason ought to be regarded, unless a monthly bonus is clearly contrary to law.

IV. The loan was properly made, and subsequent incumbrancers had notice of the plaintiff's mortgage, and have no greater equities than the mortgagor.

V. The bonus ought to be paid up to the time of the payment of the principal.   This is done only because the contract, in such cases, is to pay interest.   When interest is allowed, in any case, it is either because the parties have expressly or impliedly agreed it shall be paid, or it is given as damages.   The contract governs in decrees of foreclosure, and the agreement to pay the bonus is as legally and equitably binding, as the agreement to pay the principal.   It continues till the principal is paid, and it is only by impeaching the contract itself that it can be avoided.

VI. Usury is the creature of the statute.   Fifteen per cent. is no more usurious than six, if authorized by law.   In well-managed building associations, it makes no difference with

the borrower, whether he pays little or much, provided that while he is a stockholder, the funds are all loaned at an equally high rate; what he pays on his loan, he receives back on his stock.

The note was dated back, as a matter of convenience, to make the payments upon it correspond in time with the regular meetings, but the interest and bonus were computed and taken only from the time the money was paid. Wilcox, however, participated in the profits of the institution from the time his stock was taken. Notes take effect from the time of their delivery; and in this case, there was nothing paid, or at the time intended to be paid, for the use of the money before it was received.

*Baldwin*, *Dutton & Munson*, *Beach*, *Cowdry* and *Peck*, for the defendants.

*First.* The act of 1850, authorizes the taking of a bonus only from members of the association. 1. Wilcox was not a *bona fide* member. The only object of the parties, in his becoming such, was to enable him to make the loan. 2. It was part of the agreement, in borrowing the money, that he should sign the constitution, as well as the note.

*Secondly.* If Wilcox had been a *bona fide* member, the contract was one not authorized by the act of incorporation.

The act authorizes the association "to receive for such loan or loans, in addition to the legal rate of interest, such a bonus as the parties in each case may agree upon."

I. That which in this contract is called bonus, is, in fact, interest. 1. When the amount agreed to be paid for the use of money is dependent upon the duration of the loan, and becomes, due from time to time, in consequence of the continuance of the loan, the amount so accruing is interest, whether called by that name or any other. 2. A bonus is a sum agreed to be paid, for some privilege or favor granted, at the time of the agreement. It is a fixed and definite sum, the

amount of which is dependent upon considerations, which exist at the time it is agreed to be paid, and is not affected by any contingencies which may subsequently arise.

II. In authorizing them to "receive such a bonus," as the parties may agree upon, the legislature contemplated a sum to be received at the time of the loan, and not the power to impose conditions, by virtue of which, future payments could be enforced. But this contract calls for divers bonuses, and they are spread over the entire duration of the loan, in the proportion of twelve distinct bonuses to each year of its continuance.

If they had intended that the association should, by a general regulation, prescribe a "rate of bonus" to be paid on all loans, they would have used language more appropriate to express their meaning.

*Thirdly.* The plaintiffs made the contract, with full knowledge that it was not authorized by their charter. Its original constitution recognizes a bonus, as a sum of money bid for the privilege of making a loan.

This section was abolished in 1852, and, in lieu thereof, it was provided that "the 'rate of bonus' on permanent loans" shall not exceed "three-quarters of one per cent. a month."

But the very nature of a bonus is such, that to prefix to it the term "rate of," destroys its meaning, because its attempts to unite two things which can not co-exist, to wit, a payment in advance, and a payment which shall be the same payment. and yet not in advance.

*Fourthly.* It is said that the system of imposing a per centage, during the continuance of the loan, is equivalent to taking a bonus at the commencement of the loan, because, in both cases, the borrower pays an excess over the legal rate of interest. It is not true that the imposing a per centage, to accrue from time to time, amounts to the same thing as receiving a bonus.

The imposition of accruing bonuses has been adopted. 1. From the knowledge that a borrower will readily agree to

pay, in the future, a per centage in addition to the legal rate of interest, which, if condensed into a sum payable in advance, would startle him from the project. 2. Because if a bonus is paid, the most illiterate can appreciate the amount he is to pay for the privilege of the loan; while under the other system, few borrowers are expert enough to discover the enormous sum, hidden under the phrase "one-quarter of one per cent. a month."

IV. There is a wide difference between the two systems, as it respects third persons. If a borrower pays a bonus in advance, the burden falls where it belongs, upon the man who has agreed to submit to the extortion. But if accruing bonuses are imposed, and security taken for their payment, subsequent incumbrancers, who were no parties to the contract, are compelled to become sufferers by the extortion.

V. This contract, being unauthorized by the act of 1850, is void, and the mortgage, being part of the same transaction, is also void. *Philadelphia Loan Co.* v. *Towner*, 13 Conn. R., 249. *Bank of U. S.* v. *Owens*, &c., 2 Pet., 527.

VI. If the contract is not void, it is clearly usurious, and the plaintiffs are entitled to a decree for the amount originally lent only, deducting the amounts paid on the contract. Rev. Stat., 867.

WAITE, C. J. The loan, made by the plaintiffs to the defendant, Wilcox, in the present case, aside from the statute, "authorizing the establishment of savings and building associations," was unquestionably made upon an usurious contract, and in violation of the statutes made "to restrain the taking of usury." For although one portion of the sum to be paid for the use of the money is called interest, and another portion a bonus, yet in truth, and in fact, it was nothing more nor less, than a contract to pay fifteen per cent. for such use.

The only question therefore is, whether the former statute

authorized the making of the contract in question.    If it did, then the contract is valid, and Wilcox is bound to perform it; if it did not, then it falls within the operation of the statutes, prohibiting the taking of usury.

The former statute, so far as it is applicable to the case under consideration, provides that " every association, formed in accordance with the provisions of this act, shall be a body corporate, and politic, with power to loan money to its members, upon real or personal security, or upon the pledge of the borrower's stock in said association; to receive interest for money so loaned, monthly, quarterly, semi-annually or in advance; to receive for such loan or loans, in addition to the legal rate of interest, paid as aforesaid, such a bonus as the parties, in each case, may agree upon; to loan money to persons, not members of said association, at the legal rate of interest, provided no member of said association, who can furnish good and sufficient security therefor, applies for it." Statutes, 1854, 218.

It is apparent, from that provision, that the legislature intended to authorize an association, formed under the statute, to receive a compensation, in addition to the legal rate of interest, for a loan of money made to one of their members.   But did they intend to exonerate all contracts, made with their members, from the operation of the usury laws ? We think not.

Had they so intended, they would have used language more appropriate for such purpose.   They naturally would have said, that such associations might loan money to their members, at such rates of interest, or upon such terms, as the parties might agree.   This language would have been plain, intelligible, and liable to no misconstruction.

But they have simply authorized the receipt of a bonus for the loan, in addition to the legal interest.   By that expression, we think that they meant something definite; something distinct, and independent of the interest, in the ordinary acceptation of that term; a definite sum for a loan for a

specified time, and not anything which the parties, in their contract, might choose to denominate a bonus.

But even this extra compensation can be received only from a member of the association. No loan can be made to any other person, at more than legal interest, and not even at that rate, provided any member of the association, who can give sufficient security, applies for the loan.

Again, the statute authorizes the receipt of the interest monthly, quarterly, semi-annually, or in advance, but confers no authority to receive the bonus in that manner; implying that the latter is to be paid in a different mode. It merely authorizes the receipt of a bonus, in addition to the interest, which might be received in a specified form.

Had the legislature intended to sanction the payment of the bonus, in the manner in which the interest might be received, why did they not say that the association might receive the interest on the money loaned, and the bonus agreed upon by the parties, monthly, quarterly, semi-annually, or in advance?

But they have not so said, and, as we think, for a very good reason; they did not intend to authorize contracts of so ruinous a character, as the one under consideration. Their design was to benefit a class of borrowers, who might not be able to obtain loans in other modes.

The name of the present plaintiffs implies, that one object of their association was to accommodate mechanics and working-men with loans, and they say, in the preamble to their constitution, that they are desirous of enabling each member, to procure, for himself, a dwelling-house, and thus become the proprietor of his own home.

Such men can generally understand the effect of a contract for a loan, at the legal rate of interest, although a specific sum may be required to be paid for the accommodation, for a given period of time. If the borrower fails to pay at the end of that time, his debt is subject only to lawful interest.

And how much he can afford to pay, for that accommodation, is a matter within his judgment.

But such men may not all be able to foresee the consequences of a contract like the one under consideration; a contract, by which the borrower is bound to pay fifteen *per cent. per annum,* for the loan, so long as it continues, and from an accumulation of the debt, at that rate of interest, he has no means of extricating himself, except by a re-payment of the debt, with the accumulated interest.

This he may not, at all times, be able to do. Sickness, scarcity of money, misfortune in business, and various other causes, may prevent. And if he has mortgaged his dwelling-house for the security of the loan, he may find that the loan, instead of enabling him to become the proprietor of his own home, is sweeping it from under him, with all his other earnings, therein invested. His condition, upon a failure to pay, is very different from that of a member, who has borrowed at lawful interest, and a stipulated bonus.

The latter, under no circumstances, can be compelled to pay, in addition to a specific bonus, more than the debt, and the lawful interest, however long the debt may remain. But the debt of the former may go on accumulating, at a rate, which, if the debt be large, few men can bear, for any great length of time, without becoming ruined.

We have been referred to the statute, passed at the last session of the general assembly, providing that the bonus on certain loans made to stockholders, shall, in no case, exceed twenty-five per cent. on the amount loaned, when taken for the whole time for which the loan is made, and one-half of one per cent. per month, when taken monthly. Rev. Stat., 19. Hence it is claimed that the statute, limiting the monthly payments of a bonus, impliedly admits the legality of such contracts under the previous statute.

That statute was passed subsequent to the making of the contract in the present case, and by an express provision, does not go into operation until the first of January, 1856.

Mutual Savings Bank and Building Association *v.* Wilcox and others.

What the true construction of the statute is, is not a question properly before us, and any opinion, which we might express upon the subject, would be but an *obiter dictum*, not legitimately binding in any subsequent case.

It is obvious, however, that it can have no effect upon the contract under consideration, the construction of which must be governed by the law in force, when it was made.    We are not to be understood as saying that the legislature had no power to authorize the making of such a contract.    All we mean to say is, that, in our opinion, when it was made, there was no law in force, making it a legal contract.

It is said, by the defendants, that the contract was not merely usuric us, but void, as one which the plaintiffs, by the statute empo vering them to act, had no authority to make. And the cases of the *Philadelphia Loan Company* v. *Towner*, 13 Conn. R., 249, and *The Bank of the United States* v. *Owens and others*, 2 Pet., 527, are cited in support of the claim.

But the former case is an authority against the defendants.    Williams, C. J. there says : " In this state most, if not all, the bank charters prohibit the taking of more than six per cent., and leave the effect to be determined by the general law.    It has never been claimed that a construction was to be given to such contracts, different from that given to a similar one, made by an individual."    And Judge Sherman, who differed from the other judges in that case, placed his dissent upon the ground, that the plaintiff's charter prohibited the taking of more than six per cent. interest.

In the case in Peters' Reports, the charter of the bank contained an express provision to the same effect.

. In the present case, the statute authorizes the company to loan money, and contains no express provision, prohibiting them from taking more than legal interest.    In the language of the court in the former case, the contract must be considered in the same manner as if the loan had been made

by an individual. In such case it would be merely usurious, and not entirely void.

Another question has been made, and that is, whether the payments, which have been voluntarily made on account of the bonus, are not valid. The statute, it is said, expressly authorizes the taking of a bonus, and if it does not sanction a contract, made in the form adopted in the present case, yet if, under it, a payment has been voluntarily made, it amounts to a waiver of objection to the form, and is therefore good.

In this respect, it is claimed, that the contract is like one for the payment of compound interest, which the law will not generally enforce, yet if the debtor voluntarily pays it, or embraces it in a new note, he can neither recover the money paid, in the one case, nor invalidate the note in the other. *Camp* v. *Bates*, 11 Conn. R., 487.

But a majority of the court are of opinion, that the contract, in its inception, was usurious, and that the statutes, relating to usury, apply as well to that part denominated a bonus, as to the interest, both being of the same character. The payments, on both accounts, were made for the forbearance of the money loaned.

Another question relates to the payments, made by Wilcox to the plaintiffs, upon his subscription for stock. It is found that the subscription and payments were made, for the purpose of enabling him to obtain the loan.

But as he had a perfect right to become such stockholder, and in consequence obtained the loan, we think that the mere circumstance, that he is not liable to the full extent of his contract, does not affect his rights, or his liability, as a stockholder.

We therefore advise the superior court to ascertain the amount due upon the note, in conformity with the provisions contained in the statutes relating to usury, and pass a decree in favor of the plaintiffs accordingly.

In this opinion the other judges, STORRS and HINMAN, concurred.

Decree accordingly.