# Philanthropic Building Association *versus* McKnight.

The payment of usurious interest is not such a voluntary payment as will entitle the receiver to retain it; the money is paid under the constraint of a formal, though illegal contract, obtained by oppression, and by taking advantage of the necessities of the borrower, and may be recovered back by action.

To enable the borrower to recover back a sum paid for usurious interest, no other evidence of duress or oppression is necessary, than is involved in the act itself of taking the money under an usurious contract.

A building association made a loan to one of its members, at a premium of 28 per cent., which was secured by a bond and mortgage for the nominal amount of the loan, and a transfer of the borrower's shares of stock as collateral security; the borrower being desirous of paying off the loan before the mortgage became due, the association settled with him by taking his stock at the amount paid on it, deducting ten per cent. from the nominal amount of the loan, and receiving the balance in cash: *Held*, that the amount paid beyond the sum actually loaned, with legal interest, might be recovered back by the borrower.

ERROR to the District Court of *Philadelphia.*

This was an action of *assumpsit* by William McKnight against The Philanthropic Savings, Loan and Building Association, to recover back a sum of money paid to the defendants on an usurious contract.

On the 23d June 1854, the plaintiff, who was the holder of five shares of stock in The Philanthropic Savings, Loan and Building Association, was the successful bidder for a loan of $1000 at a premium of 28 per cent.. He accordingly received from the defendants the sum of $720, executed to them a bond and mortgage in the sum of $1800, and transferred his five shares of stock as collateral security.

On the 9th August 1858, the plaintiff notified the defendants of his desire to pay off his loan and discharge the mortgage. A settlement was accordingly had between the parties, in which the mortgage was estimated at $900, and the defendants agreed to take the plaintiff's stock at the sum he had paid in on account of it; the balance, amounting to $574.07, the plaintiff paid in cash, and satisfaction was entered on his mortgage. This suit was subsequently brought to recover back the difference between the sum of $720 with legal interest, and the amount actually paid to the defendants.

The court below (HARE, J.) charged the jury as follows :—

"A loan of money was made by defendants to plaintiff, nominally of $1000. The amount he actually received was $720. He gave the defendants his bond and mortgage for $1800, though the amount it was really meant to cover was $1000. This action is brought to recover an alleged overpayment by the plaintiff, on account of this loan.

[Philanthropic Building Association *v.* McKnight.]

" The account between the parties is to be settled on the footing of a loan of $720; the principal and interest to be paid back. Plaintiff from time to time made payments, professedly on different accounts, interest, fines, instalments for his stock—in all, $641.98. From this take $180, the legal interest on $720, from the date of the loan to the time of the final payment, and the balance, $461.98, is the amount which he did not pay for legal interest. He finally paid the defendants $574.07, August 24th 1858, and his bond and mortgage were surrendered to him, and satisfaction entered.

" The Supreme Court have said that all the payments, on any account, to these associations, are on account of whatever the borrower · owes them, either as principal or interest. The rule, as between debtor and creditor, is, that all sums over the amount of interest due at the time when they are paid, respectively, are to be credited on account of principal. What the plaintiff owed the defendants, then, as principal, was diminished by these monthly payments to the amount of $461.98, at least.

" But there is an intermediate calculation. As this was not paid in a gross sum, but from time to time, whatever of these sums were over and above the legal interest then due, went to diminish the principal upon which the next succeeding calculation of interest was to be made; and so on. But I have not been asked to say whether these payments are to be credited as made at the time they were paid respectively, or as if made in a gross sum, at the time of final payment. All I say is, that you must give credit on account of the principal, for all money paid over and above legal interest. Your verdict will be for the amount the plaintiff has overpaid on account of principal, with interest from August 24th 1858, the date of final payment.

" The defendants' counsel desires me to charge you, that if you believe, from the evidence, that the plaintiff, before his mortgage became due and could be demanded, proposed to the defendants, as appears by the minutes of the directors, in evidence, to pay off his mortgage, and withdraw his stock, and that the defendants accepted the same, and a settlement was had accordingly, and the mortgage of the plaintiff satisfied; in such case he cannot recover in this action on the ground of an overpayment, or usurious payment of interest. To this I answer in the negative, and charge you that in such case the plaintiff can recover, in this action, whatever the jury believe· that the plaintiff paid into the association, on account of principal, instalments, interest, ·fines, or otherwise, over and beyond the sum of $720, originally lent, and six per cent. interest thereupon.

" The defendants' counsel also requests me to charge, that in making the calculation of payments to be credited to the plaintiff on account of the mortgage loan, the various items paid by him

[Philanthropic Building Association *v.* McKnight.]

as instalments on the plaintiff's stock, which had been transferred to the defendants as collateral security for the loan made to the plaintiff, are not to be included, and that any settlement between the parties to this suit, in regard to such stock, is distinct from the matter in controversy here. I cannot so charge you. On the contrary, I charge you that all payments made by the plaintiff on account of the stock so transferred, are to be credited by the defendants to the plaintiff, on the loan of $720.

"I am also requested by defendants' counsel to charge you, that the jury may fairly infer, from the evidence, that the arrangement between the parties was, that the plaintiff should sell to the defendants, and accordingly did sell to them, the five shares of stock previously transferred as collateral, for the balance due by him upon the mortgage loan, after crediting him with all direct payments thereon for principal or interest, and that if the jury so find, it is a bar to this action. But I decline so to charge you, and charge you that there is no evidence from which the jury may infer any such arrangement or agreement."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiff for $339.99, they removed the cause to this court, and here assigned the same for error.

*G. M. Wharton*, for the plaintiffs in error.—The payment by McKnight was a voluntary one, his mortgage was not due, and could not be demanded of him; there was, therefore, no duress or compulsion, and he cannot recover back money thus voluntarily paid: Thomas *v.* Shoemaker, 6 *W. & S.* 183; Smith *v.* Bromley, *Doug.* 670 *n.;* Browning *v.* Morris, *Cowp.* 790.

*S. C. Perkins*, for the defendant in error.

The opinion of the Court was delivered by

STRONG, J.—That the payment of usurious interest is not a voluntary payment in any such sense as to entitle the receiver to retain the sum paid above legal interest, is too well settled to admit of doubt. The money is paid under the constraint of a formal though illegal contract. That contract itself was obtained by oppression, by taking advantage of the necessities of the borrower, and, of consequence, so was the usurious interest paid under it. The early disposition of the English courts was to deny the right of a party paying such interest to recover back any portion of the money paid, for the reasons that both parties to such a transaction were deemed to be "*in pari delicto,*" and the excess of interest was regarded as paid voluntarily, so that the maxim "*volenti not fit injuria*" would apply: 1 *Salk.* 22. The authority of this decision, however, was soon questioned. Lord

MANSFIELD declared that the case had been denied a thousand times: *Cowper* 199. At a later date a distinction was taken between transactions under statutes enacted on grounds of general policy, where each party violating the law is held to be in equal fault, and transactions under the usury laws, enacted to protect weak and needy men from being defrauded and oppressed. To the latter the law does afford relief. It regards the lender on usury as an oppressor, and the borrower as the injured and oppressed: Browning *v.* Morris, *Cowp.* 790; Briggs *v.* Thompson, 20 *Johns.* 294; Thomas *v.* Shoemaker, 6 *Watts & Serg.* 183. And in none of the cases do we discover that any other evidence of duress or oppression has been held to be necessary, than such as is involved in the act itself of taking the money under an usurious contract. The principle of the statutes of usury seems to be, that the lender alone is the wrongdoer, and that the borrower is his victim.

In this case, the jury were instructed that the plaintiff could recover whatever he had paid to the defendants (on account of principal, instalments, interest, fines, or otherwise) over and beyond the sum of $720 originally lent, and six per cent. interest thereon, and this even though the plaintiff, before his mortgage became due and could be demanded, proposed to the defendants to pay it and withdraw his stock, and although a settlement was had accordingly, and the mortgage was satisfied. By the term withdrawal of the stock is to be understood not that stock was returned to the plaintiff, for none ever was, but that he should cease to be a stockholder. In effect, the transaction was an extinguishment of the stock. The parties agreed to treat with each other simply as debtor and creditor. Now, how is it possible, that the fact that the settlement was made before the mortgage became due and payable can change the nature of the transaction? It still remains, that the security which had been exacted was for a greater amount than the sum actually lent. The settlement and payment, therefore, were under the constraint of an usurious contract, and consequently, the "taking" the money was itself usurious, whether before or after the day of payment fixed in the mortgage. Nor can the character of the "taking" be changed, by the fact that the defendants accepted a smaller amount of usurious interest than they would have received had they exacted all that the mortgage called for. Then, what is there in the withdrawal of the stock, in other words, its extinction, more than an application of the amount paid upon it toward the satisfaction of the debt? Certainly the defendants cannot say, after having taken an assignment of the stock as collateral security for the payment of the plaintiff's bond and mortgage, that its value was less than the amount of money paid to them upon it. When,

therefore, he relinquished to them all his legal and equitable ownership, when he gave to them the benefit of all the payments he had made upon it, it is not easy to see why he is not .to be credited with the amount of those payments toward the discharge of his debt. The stock may have been worth more than that amount. It could not have been worth less. The charge to the jury in this respect was, therefore, unexceptionable, and it was in entire harmony with what was said in Kupfert *v.* The Guttenberg Building Association, and Hughes's Appeal, 6 *Casey* 465 and 471.

We think, also, the court was right in refusing to charge the jury that there was evidence from which they might infer that the arrangement made and consummated between the parties was a sale of the stock to the defendants for the balance of the mortgage loan, after deducting all direct payments for principal and interest. We are unable to find any evidence which would warrant such an inference. A withdrawal of the shares, not a sale, was the thing proposed and assented to. Nothing more was intended, nothing more was done.

Judgment affirmed.