FANNIE M. RANDALL ET AL., APPELLEES, V. NATIONAL
    BUILDING, LOAN & PROTECTIVE UNION OF MIN-
    NEAPOLIS, APPELLANT.

42  809
42  817
43  877
42  809
49  206

42  809
57   98

FILED NOVEMBER 20, 1894.   No. 5736.

1. **Building and Loan Associations**: MORTGAGES: ACTION TO
    CANCEL: FORECLOSURE: ISSUE ON APPEAL.   A member of a
    building and loan association, who was also a borrower, brought
    an action, before the maturity of the stock or loan, to redeem
    from the mortgage given to secure the loan on the ground of
    fraud in procuring it.   She prayed that the mortgage be can-
    celed on her payment of the amount found by the court to be
    due.   The association brought its action to foreclose the mort-
    gage because of delinquency in interest.   The note provided
    that any such delinquency rendered the whole debt due.   The
    court consolidated the two cases and made a general finding
    for the plaintiff in the first suit, but ascertained the amount due
    on the mortgage and decreed a foreclosure and sale.   The associ-
    ation appealed.   *Held*, That inasmuch as both parties sought
    the same relief and the appellant obtained all the relief it
    sought except as to the amount found due, the other issues were
    immaterial to the appeal.

2. ——: FORFEITURE: ACCOUNTING: PAYMENTS ON STOCK.   The
    plan of a building association was that its members should
    make certain payments periodically upon the stock and for other
    purposes, that the stock should mature at a fixed time.   Its
    loans also matured at a fixed time.   A member made a number
    of payments upon the stock and also certain payments of inter-
    est and premium.   She then ceased to pay, the association de-
    clared her stock forfeited and instituted an action to foreclose
    the mortgage securing the loan.   *Held*, That the payments upon
    the stock should in an accounting of the amount due on the
    mortgage be treated as payments *pro tanto* on the loan.

3. ——: ——: CONTRACT OF MEMBERSHIP: PAYMENTS ON
    STOCK.   The fact that the contract of membership provided
    strictly for the forfeiture of stock in case any payment was not
    made when due did not change the above rule.   In an action
    to enforce the mortgage a court of equity will, under such cir-
    cumstances, relieve against such forfeiture to the extent of treat-
    ing the payments made upon the stock as payments upon the
    loan.

APPEAL from the district court of Hall county. Heard below before HARRISON, J.

The facts are stated by the commissioner.

*W. A. Prince* and *George D. Emery,* for appellant:

The appellee Fannie M. Randall has no right to recover, either directly or as a credit upon her indebtedness on the mortgage, the premiums or stock dues paid before default, and which have been duly forfeited and so declared. (*Fowler v. Woodward,* 26 Minn., 349; *Northwestern Mutual Life Ins. Co. v. Allis,* 23 Minn., 337; *Smith v. Mariner,* 5 Wis., 551; *Ludlow v. Dutch Rhenish R. Co.,* 21 Beav. [Eng.], 43; *Naylor v. South Devon R. Co.,* 1 De G. & Sm. [Eng.], 32; *Pendergast v. Turton,* 1 Younge & Coll. [Eng.], 98; *Sparks v. Liverpool Water-Works Co.,* 13 Ves. Jr. [Eng.], 433; *Germantown P. R. Co. v. Fitler,* 60 Pa. St., 124; *Small v. Herkimer Mfg. Co.,* 2 N. Y., 335; *Marvin v. Universal Life Ins. Co.,* 39 Am. Rep. [N. Y.], 657; *Roehmer v. Knickerbocker Life Ins. Co.,* 63 N. Y., 160; *Freeman v. Ottawa Building Homestead & Savings Association,* 114 Ill., 182; *Beadle v. Chenango County Mutual Ins. Co.,* 3 Hill [N. Y.], 161; *Attorney General v. North American Life Ins. Co.,* 82 N. Y., 172; *Born v. Schrenkeisen,* 110 N. Y., 59; *Attorney General v. Continental Life Ins. Co.,* 68 N. Y., 443; *How v. Union Mutual Life Ins. Co.,* 80 N. Y., 43; *Klein v. New York Life Ins. Co.,* 104 U. S., 88; *New York Life Ins. Co. v. Statham,* 93 U. S., 24; *Wheeler v. Connecticut Mutual Life Ins. Co.,* 82 N. Y., 543; *Kellner v. Mutual Life Ins. Co. of New York,* 43 Fed. Rep., 623; *Ewald v. Northwestern Mutual Life Ins. Co.,* 60 Wis., 431; *Heim v. Metropolitan Life Ins. Co.,* 7 Daly [N. Y.], 536; *Lantz v. Vermont Life Ins. Co.,* 21 Atl. Rep. [Pa.], 80; *Bosworth v. Western Mutual Aid Society,* 75 Ia., 582; *Ashbrook v. Phœnix Mutual Life Ins. Co.,* 94 Mo., 72; *Pendleton v. Knicker-*

*bocker Life Ins. Co.*, 5 Fed. Rep., 238; *Milligan v. Goddard*, 1 How. Pr., n. s. [N. Y.], 377; *Lyon v. Supreme Assembly Royal Society of Good Fellows*, 26 N. E. Rep. [Mass.], 236; *Alabama Gold Life Ins. Co. v. Thomas*, 74 Ala., 582; *Standley v. Northwestern Mutual Life Ins. Co.*, 95 Ind., 254; *Continental Life Ins. Co. v. Houser*, 89 Ind., 258; *Scheufler v. Grand Lodge A. O. U. W.*, 47 N. W. Rep. [Minn.], 799; *Reeve v. Ladies' Building Association*, 19 S. W. Rep. [Ark.], 917.)

*M. Randall, contra.*

IRVINE, C.

The defendant was a Minnesota corporation in the nature of a building and loan association. The plaintiff became a member of the association and procured a loan therefrom, executing her note and mortgage, the latter on property in Grand Island, to secure the loan. This was in September, 1889. In 1891 she brought her suit, her husband joining therein, in the district court of Hall county, charging that she was induced by fraud to procure the loan, pleading a tender to the association of all remaining due on the mortgage, asking an accounting of the amount justly due, and that the mortgage be canceled upon her payment into court of the amount so found. Soon after the defendant commenced suit in the same court to foreclose the mortgage. The two actions were consolidated. The court found generally for the plaintiffs in the first action, ascertaining the amount due on the mortgage as $703.06, and ordered that unless this amount should be paid in a time fixed the mortgaged premises be sold to satisfy the debt. The defendant appeals.

A portion of the argument related to the propriety of the court's finding for the plaintiffs, and the petition and proofs are attacked as insufficient to authorize the relief prayed. We cannot see how these questions are material

in the present condition of the case. The plaintiffs asked
that they be permitted to pay the amount due. The de-
fendant asked that they be required to pay the amount due.
While the decree finds generally for the plaintiffs, it orders
a sale of the property if the amount due it is not paid
within a time certain. The defendant, therefore, obtained
all the relief it sought, unless the court erred in ascertain-
ing the amount of recovery. We think this question is
the only one for determination under this condition of the
record. The contract of membership in the association re-
quired the member to make certain periodical payments as
assessments on the stock subscribed, certain payments to
the expense fund, and certain other payments, or rather
somewhat uncertain payments, to be made as called for, for
the purpose of satisfying the stock of its deceased mem-
bers. The contract of loan required the borrower to pay,
in monthly installments, interest on the loan at the rate of
five per cent per annum and a "premium" of five per cent
per annum. In ascertaining the amount due on the mort-
gage the court applied the payments made upon the stock
of the plaintiff as partial payments of the principal debt.
The defendant claims that this was erroneous; that the
loan and the membership were by virtue of separate con-
tracts; that they must be treated as distinct; that under
the rules of the association the stock payments had become
forfeited by delinquency in subsequent payments and that
the defendant was entitled to recover the face of the loan,
together with all unpaid premiums and interest. It must
be here remarked that the court allowed no interest from
the commencement of the action to the rendition of the
decree. This was correct, provided the court properly as-
sessed the amount of recovery, because the amount so found
was less than the tender made before action brought, which
was refused by the association.

In order to determine the principal question it will be
necessary to state more particularly some of the features

of this particular association.   In the first place its plan
was that its stock and loans should both mature at a time
certain.   There was no general provision for a surrender
and withdrawal from membership, but the right to with-
draw before the maturity of the stock was confined to the
representatives of deceased members, who might at their op-
tion remain in the association or withdraw.   To meet pay-
ments on account of such withdrawals the withdrawal as-
sessments before mentioned were made.   The contract of
membership provided in different places very rigidly that
in case any member failed to pay by the time it was due
any of the various assessments, his membership should be
forfeited and all sums theretofore paid should be forfeited
to the association without right to recovery or accounting
therefor.   The note and mortgage provided that any fail-
ure to pay any installment of the interest or premium
when due should mature the whole debt.   Mrs. Randall
subscribed for thirteen shares of stock in September, 1889.
Her note and mortgage were dated October 1, 1889, and
are for $1,000.   The stock was planned to mature in five
years.   The note was payable fifty-nine months after date.
An initiation fee with certain other charges and all assess-
ments, interest, and premium were paid until and includ-
ing February, 1891, when Mrs. Randall ceased to pay and
soon after brought suit.   In July, 1891, and before the
suit to foreclose was commenced the association passed a
resolution declaring Mrs. Randall's stock and the payments
thereon forfeited.   Under these circumstances is Mrs. Ran-
dall entitled to have her stock payments credited upon the
loan?   In the first place it must be remembered that this
association is a foreign corporation and is not entitled to
the protection which our statutes (Compiled Statutes, ch.
16, sec. 145 *et seq.*) afford or attempt to afford to such corpo-
rations in this state.   The events were prior to the amend-
ment of the law referred to in 1891, and the association
has not attempted to comply with the provisions of the

amendatory law in regard to foreign corporations. The validity or nature of that legislation is not therefore presented for consideration in this case. The cases are very numerous relating to the respective rights of such associations and their members. A review of them would be tedious and not very useful. A very clear statement of the result of the cases may be found in the note to *Robertson v. Homestead Association*, 69 Am. Dec. [Md.], 145. The law is there stated, with abundant citations, that when a member of an association becomes a borrower the transaction has been considered as so much in the nature of a loan that subsequent payments made by the member upon his stock are partial payments upon his debt, but other cases (and we think the greater weight of the modern cases) is that payment of dues are not *ipso facto* payments upon the mortgage debt and do not operate of themselves to extinguish it *pro tanto*. Still the borrower has a right to so apply them and the association may, in case of default, make such application. A proper regard for the nature of the contract we think leads to the conclusion that during the currency of the debt and membership the accounts arising out of each should be kept separate and that stock payments do not as they are made operate as payments on the debt; but it must not be forgotten that the object of the stock payments is ultimately to satisfy the stock and that in the case of a borrower such payments operate ultimately to satisfy the debt. While a borrower may, if the association works successfully, become entitled to other returns upon his stock, until the debt is satisfied all payments made by him are finally applied to that purpose. We are aware that there always seems to be an effort made to obscure this relationship and to give the transaction a different form, but whatever may be the devices of actuaries to make it appear that payments are investments simply in a profitable stock and that the loan in some mysterious manner pays itself, the fact is that it is

paid from the stock assessments, and that in the contemplation of both parties the stock assessments are to be applied sooner or later to that purpose. The right of either party to so apply them in an organization of this character during the currency of both loan and membership is not here to be decided, but the association has terminated Mrs. Randall's membership by its resolution of forfeiture and has matured the loan by its election to foreclose. This proceeding is, therefore, not one to determine the rights of a continuing membership, but this is a proceeding after membership determined and the loan matured to adjust the correlative rights and duties of the parties. In such case we think it very clear that the stock payments must be applied to the purpose for which they were principally intended, to-wit, as payments on the debt. In case of associations whose shares have an uncertain maturity, elaborate calculations have sometimes to be made in order to determine the present value of the shares, but in this case, where the maturity is certain and the plaintiff renounces all claims to profits, the face of the payments may indicate the proper credits. To avoid this application of the payments the defendant urges the forfeiture clauses of its contract. We agree with the defendant that equity will not ordinarily relieve against such forfeitures, and this rule probably extends so far that if Mrs. Randall had not been a borrower and her stock had been forfeited for delinquency in assessments she might not have the affirmative aid of a court to recover for past payments, but this principle does not extend so far as to induce a court to lend its affirmative aid to enable a lender to recover the face of the debt where payments have been made under an agreement that on certain conditions they may be forfeited. It is more than probable that the effect of this forfeiture would be to deprive Mrs. Randall of the right to participate in any profits which might have arisen on her stock, and when given this effect we think the contract of the parties has been enforced. If A lend

B $1,000, payable in installments of $10 each, B agreeing that if he fail to pay any installment when it comes due, all payments shall be forfeited, and B pay ninety-nine of such installments and fail to pay the one-hundredth, would any court in Christendom permit A to recover the $1,000? It is just such penalties that courts of equity have always relieved against. The treatment of penal bonds, as well as the whole doctrine of mortgages, is based upon a principle of relieving against such forfeitures, or rather refusing to assist them, and the principle which has thus prevailed in such cases for centuries is precisely applicable here. We think, therefore, that the district court proceeded properly in making the computation. In *Lincoln Building & Saving Association v. Graham*, 7 Neb., 173, it is evident this court adopted a similar view in making the computation.

The plaintiffs state in their brief that they took a cross-appeal. Aside from this statement the record bears no evidence of such fact. This is not very material, however, because the plaintiffs state that their cross-appeal is based upon the failure of the district court to find in their favor on their plea of usury. We cannot find on a close examination of the record that the plaintiffs anywhere plead usury in the transaction. The decree of the district court is, therefore, in all things

AFFIRMED

HARRISON, J., not sitting.