### STATE et al. v. TUSCALOOSA BUILDING & LOAN ASS'N.

6 Div. 672.

Supreme Court of Alabama.

Jan. 17, 1935.

Rehearing Denied Feb. 21, 1935.

Further Rehearing Denied June 6, 1935.

A. A. Carmichael, Atty. Gen., Frontis H. Moore, Asst. Atty. Gen., Matt H. Murphy, Sp. Asst. Atty. Gen., and Edw. de Graffenried and A. A. Van de Graff, both of Tuscaloosa, for appellants.

Harwood & McQueen, of Tuscaloosa, and Bradley, Baldwin, All & White and Borden Burr, all of Birmingham, for appellee.

Stokely, Scrivner, Dominick & Smith, of Birmingham, amici curiæ.

KNIGHT, Justice.

The state of Alabama, for the use of itself and of Tuscaloosa county, and of Archie Leland, as license inspector of Tuscaloosa county, brought this suit against the Tuscaloosa Building & Loan Association to collect state and county license taxes, penalties, and fees, for the years 1926, 1927, 1928, 1929, 1930, and 1931. The license tax year began on October 1st, in each of said years, and ended on September 30th of the succeeding year.

No question is presented upon the pleadings, and the cause was tried upon an agreed statement of facts. Included in the agreed statement of facts are the declaration of incorporation of the defendant, and the by-laws and amendments thereto of the association.

The court rendered judgment on the agreed statement of facts in favor of the defendant, and from this judgment the present appeal is prosecuted.

On this appeal but a single question is presented, and that is, Was the defendant, appellee here, during said years engaged in the business of lending money, within the meaning of schedule 122, Revenue Code of Alabama; Gen. Acts 1919, p. 419, § 361, schedule 70?

It appears from the agreed statement of facts that the appellee, during the entire period for which the license or privilege taxes were sought to be recovered, conducted its business "strictly in accordance with the laws of Alabama governing building and loan associations, and in strict accordance with its charter and by-laws."

It appears that appellee made no loans during said period, except to persons "who held, or, at the time of the loan, purchased its stock."

That applications for loans or advances were received from persons not members or stockholders of the association is admitted, but no loans to such persons were made until such applicants subscribed for shares of stock equal in par value to the amount of the loan or advance applied for.

It was further agreed that:

"All loans or advances of money which have ever been made by the defendant (appellee), from the time of its incorporation up to the present time, have been made under the following circumstances and conditions:

"(a) If the applicant for a loan or advance was, at the time of his application, a member of the association and an owner of a share, or shares, which were fully paid up, such member was entitled, as a matter of right, to a loan or advance of a sum of money out of available funds equal to ninety per cent of the par value of such share, or shares, of such paid up stock owned by him, upon the execution and delivery by him to the defendant of his note secured by the hypothecation to the defendant of such paid up share, or shares.

"(b) If an applicant for a loan or advance was, at the time of his application, a member of the association and the owner of, or subscriber for, a share, or shares, of stock which had not been fully paid for, such member was

entitled as a matter of right to have advanced to him, out of available funds, ninety per cent of the amount, if any, which he had paid upon the purchase price of his share, or shares, upon the execution and delivery by him to the defendant of his note secured by the hypothecation by him to the defendant of the share or shares of stock which he owned in the association.

"(c) If an applicant for a loan or advance of money was not a member of the association and the owner of any share, or shares, of stock of the defendant, at the time he applied for his loan or advance, he was not entitled to a loan or advance, and no loan or advance would be made to him unless and until he subscribed for a share, or shares, of stock equal in par value to the amount of the loan or advance applied for, and then only upon his additionally securing the same by an adequate first mortgage upon real estate owned by him, on which there already existed, or on which there was to be constructed by such owner by use of the money loaned or advanced, a dwelling house, together with an instrument hypothecating the stock so purchased, or subscribed for. Such applicant by subscribing for stock, as required, became a member and shareholder of the association and entitled to all the rights and privileges of a stockholder, including the right to vote. A certificate of stock was issued to him for the full amount subscribed for and purchased, which certificate was endorsed in blank and delivered to the defendant as security for the so-called loan or advance.

"In any case in which a loan or advance was secured by stock which had not been fully paid for, and the purchase price of which was payable to the defendant in installments, the member receiving such loan, or advance, paid interest on the unpaid balances of such purchase price and/or loan or advance, and received credit of a dividend out of the earnings of the association, upon installments paid by him, as provided in the by-laws of the defendant."

It was further agreed:

"13. During a period of time commencing prior to October 1st, 1926, and continuing to the present time, the defendant was engaged in the conduct of its business, as hereinabove described, in the City of Tuscaloosa, Alabama, including the making of loans or advances to its members or shareholders in the manner and under the circumstances hereinabove set forth.

"14. The earnings of defendant are derived from interest upon loans or advances due from, and paid by, its members, secured by mortgages on real estate and/or shares of defendant's stock, interest on time deposits in banks, and from the re-sale of real estate. Each member or shareholder who pays interest upon a loan or advance receives, upon the installments paid by him thereon, dividends out of net earnings of defendant in the percentages provided by the defendant's by-laws according to the class or classes of stock such member has subscribed for, and had issued to him.

"15. A major portion of earnings of defendant, excluding proceeds derived from the sale of shares of its stock, not understood to be earnings but paid in capital, in each of the years during the time from January 1st, 1926, to the present, was derived from the collection of interest on sums of money loaned or advanced by defendant to its members and secured by mortgages on real estate, and the hypothecation to defendant of the stock in manner and form as hereinabove set forth. In each of said years money was loaned or advanced to its members, secured by the hypothecation of defendant's stock, on which loans or advances defendant collected interest. If the income derived from the sale of defendant's shares of stock were included as earnings, the interest upon such sums loaned or advanced to its members would not be the major portion of the income or earnings received by defendant.

"16. During none of said years did defendant take out or have any license as a 'corporation whose principal business is lending money.' Revenue Code of Alabama, page 282, Schedule 122. The defendant was cited by Archie Leland, License Inspector for Tuscaloosa County, for non-payment of such license for the license years mentioned in the complaint. During each of said years defendant, through its agents, or officers, solicited persons to buy its stock and become members and thereafter to obtain loans or advances from it, in manner and form above described. Defendant also advertised to such end.

"No building and loan association in Alabama, organized and existing under the laws of Alabama, has ever been called upon to pay, nor has any such association ever paid, the license or tax sued for in this action. The defendant, within the time, and in the manner provided by law, has heretofore paid all fees and charges due to be paid by it as required of building and loan associations under the Act of the Legislature of Alabama approved August 26, 1927, and under the Act

of the Legislature of Alabama approved April 9, 1931."

And it fully appears from the agreed statement of facts that, during each of said years, "the defendant, through its agents, or officers, solicited persons to buy its stock and become members and thereafter to obtain loans, or advances from it, in manner and form above described. Defendant also advertised to such end."

From the foregoing, it appears that a major portion of earnings of defendant, excluding proceeds derived from the sale of shares of its stock, not understood to be earnings, but paid-in capital, in each of the years from January 1, 1926, to the present, was derived from the collection of interest on sums of money loaned or advanced by the defendant to its members and secured by mortgages on real estate, and the hypothecation to the defendant of the stock.

Under the head "Loan Fund," sections 3 and 4 of article IX of the defendant's by-laws read:

"Section 3. The funds of this association shall be loaned to its members on such terms and plans and at such rates of interest as may be fixed by the board of directors of this association. The premium on any loan and interest on the loan taken together shall not exceed one per cent. per month of the amount actually loaned or advanced. Should there be a surplus in the loan fund for which there is no demand the board of directors may authorize the investment of the same for the purchase of real estate and the erection of buildings thereon for sale to members of the association. Likewise the board of directors may authorize the investment of such surplus in bonds and obligations of the United States, State of Alabama, or political subdivisions thereof.

"Section 4. Loans made by the association shall be secured by a pledge of pass book or certificate of this association on which there has been paid in a sum of at least ten per cent. in excess of the amount loaned which shall be known as temporary loans or be first mortgages on real estate which shall be known as mortgage loans, but second mortgages on real estate may be taken where this association already holds the first mortgage."

The object of the association, as set forth in section 2, article 1 of its by-laws, is thus stated: "This association is organized for the purpose of raising money to be loaned to its members to facilitate the building of homes and improvement of real estate; to assist its members in saving and accumulat-ing money and in obtaining the largest possible interest on the same, and generally the doing of all things and the transaction of all business authorized by its charter and the laws of the State of Alabama."

While it appears that the association issued, and had outstanding six classes of stock, the conclusion is inescapable that its backbone and vitals are represented by the stockholders owning the $50,000 of "guarantee stock," and they are the real ultimate beneficiaries of the association.

It is the contention of the appellants that the defendant corporation, though given certain rights and powers by its charter and the general laws of the state, has not been exempted or released by any express or special statutory provision from the payment of the license or privilege tax exacted of every person, firm, or corporation, whose principal business is lending money; that the only institutions expressly exempted from this license or privilege tax are banks or banking institutions.

The law, to which the appellants point, reads: "*Money Lenders:*—Every person, firm, or corporation whose principal business is lending money, shall pay an annual license of one hundred dollars, and this schedule shall apply to all persons engaged in business, whether organized under the laws of this State or any other State or country, but shall not apply to banks or banking institutions regularly organized as such. The payment of the license in one county of the State, as evidenced by the license or official certificate of the judge of probate, shall be sufficient; provided, however, that if an office is maintained in more than one county the license shall be payable in each county where an office is maintained." Schedule 122, Revenue Code. (See Gen. Laws 1919, p. 419, § 361, schedule 70.)

It is certain that the language employed in the statute levying the license is amply comprehensive to include the defendant association. It will be noticed that the only limitations found in the statute are that it must be the person's principal business, and the only persons, firms, or corporations who are exempted are banks or banking institutions regularly organized as such.

We find no provision in the law under which the defendant does business which in terms exempts it from the license, nor have we been pointed to any such provision by able counsel, who appear here for appellee. Nor do we find anything in the law which exacts of the defendant the payment of any li-

cense, or other tax, which could be considered as having been imposed in lieu of the license sought to be recovered.

So if the defendant, appellee, does not fall within the class upon whom this license is imposed, such a conclusion must be reached because of the nature of appellee's business.

We are free to admit that, if the question of the application of the statute to the appellee were doubtful, contemporaneous construction, or interpretation placed upon this license schedule by high administrative officials, or officials whose duty it was to carry the law into effect, would, to say the least of it, be entitled to great consideration in determining the question; and especially would this be true if this construction or interpretation had prevailed for a considerable period of time. State v. Board of School Commissioners of Mobile County, 183 Ala. 554, 63 So. 76; Ex parte Stollenwerck, 201 Ala. 392, 78 So. 454; Macon County v. Abercrombie, 184 Ala. 283, 63 So. 985. Such is the rule, however, only when the meaning of the statute is doubtful. Stewart, Clerk, etc., v. Wilson Printing Co., 210 Ala. 624, 99 So. 92; United States v. Healey, 160 U. S. 136, 16 S. Ct. 247, 40 L. Ed. 369.

We take it that it cannot be successfully controverted that, when an application is made to a building and loan association for a loan on real estate mortgage, and the association requires that the applicant shall become a member of the association by subscribing for shares of stock equal in amount to the loan applied for, and the loan is, in fact, secured by mortgage on the property of the applicant, such a transaction is a loan proper, and the relation created is that of debtor and creditor.

In Corpus Juris, vol. 9, § 73, p. 956, it is said: "Some authorities have viewed the transaction as a sale of the borrower's shares to the association, and others hold it to be an advance on the stock to which the borrower expects to be entitled at the termination of the association. The remaining view, and the one taken in the greatest number of cases, is that the transaction is a loan proper, and that the relation between the borrower and the association is that of debtor and creditor. In determining the character of the transaction the courts will look at its real nature. It is immaterial whether the transaction is called a 'loan,' or an advance, or is given another name."

This court is committed to the proposition that one who borrows of the association, whether by hypothecation of the stock alone as security, or by the hypothecation of the stock and mortgage on property, occupies a dual relationship to the association. On the one hand, he is regarded as a stockholder, and on the other, he is a borrower. The respective duties and obligations resting upon him are entirely separate and distinct. He is none the less a debtor to the association for the money borrowed, because of the fact that he is also a shareholder in the association. Pioneer Savings & Loan Co. v. Nonnemacher, 127 Ala. 521, 30 So. 79; Beckley v. U. S. Sav. & Loan Co., 147 Ala. 195, 40 So. 655; Hayes v. Southern Home Building & Loan Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216; Southern Building & Loan Ass'n v. Anniston Loan & Trust Co., 101 Ala. 582, 15 So. 123, 29 L. R. A. 120, 46 Am. St. Rep. 138.

The foregoing serves to demonstrate that, if the shareholder is regarded as a borrower, upon like reasoning the association must be regarded as a lender.

This being true, it would follow, as a matter of course, that if the association's principal business, its major income, is derived from interest on loans made to its shareholders, it would be a lender of money within the terms of schedule 122 of the quoted Revenue Code.

We are not persuaded that, because of the declared objects of the association, with its supposed mutual benefit features, or the fact that the association only makes loans to members holding shares of stock, whether paid for or not, equal to the amount of the loan in each given case, or the fact that the association was organized for the praiseworthy purpose of fostering home building, or the fact that the high administrative officers, charged with the duty of collecting the licenses, have for years so construed and interpreted the law as to relieve building and loan associations from the burden of this license, such considerations should lead us to the conclusion that the appellee, and those engaged in similar business, are not subject to the license tax imposed by schedule 122 of the Revenue Code. If it was not the legislative purpose to require this license of building and loan associations, the lawmakers failed to say so, and we have no right, under the guise of construction, to rewrite the law. We can only learn what they intended, from what they have said. When their language is plain, no discretion is left with us. "We have no right to stray into the mazes of conjecture, or to search for imaginary purposes." State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477, 479; State v. McGough, 118 Ala. 166, 24 So. 395.

It will thus be seen from the foregoing that we are at the conclusion that the appellee was liable to the license sued for, and the penalties and fees, and the court below fell into error in holding to the contrary. The judgment of the circuit court will be, and is, reversed, and inasmuch as the case was tried before the judge without a jury, upon an agreed statement of facts, judgment will be here entered for the full amount of the license for the years 1926, 1927, 1928, 1929, 1930, and 1931, and for the penalties and fees.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

### On Rehearing.

KNIGHT, Justice.

We have given most careful consideration to appellee's motion for a rehearing in this cause, and to the very elaborate brief filed by its counsel in support of the same. This further consideration but convinces us that the conclusions heretofore reached in the case are sound, and supported by the great weight of authority.

Counsel for appellee, among other things, strenuously insist that we are in error in the opinion filed, in which we said with reference to the status of the "guarantee stock": "While it appears that the association issued and had outstanding six classes of stock, the conclusion is inescapable that its *backbone* and *vitals* are represented by the stockholders owning the $50,000.00 of 'guarantee stock,' and they are the real ultimate beneficiaries of the association."

We are still of that opinion, for (a) it appears from the certificate of incorporation that the association, among its charter powers, had the power "to issue stock of such kind, and character, and classes in such proportions as between the different classes of stock with such designation, preferences, restrictions, and qualifications as to assets, dividends, participation, qualifications, and voting powers as may be prescribed by the by-laws of the association"; (b) by the second section of article 1 of the by-laws, it is provided: "*At least two-thirds of the directors shall be the holders of the guarantee stock of the association* as long as there shall exist a sufficient number of holders of such guarantee stock and said holders shall qualify as directors"; (c) by section 1 of article XL (amendment), it is provided: "These by-laws may be changed or amended at any annual meeting of the stockholders called for that purpose, *or by the board of directors* at any regular monthly meeting, provided that *any amendment* by the stockholders at *any annual* meeting or *any special meeting* shall receive a *majority vote of the holders of the guarantee stock*" (italics supplied); and (c) section 1, of article VII, while providing that, "in the event of the failure of the association or its insolvency or impairment from any cause whatsoever all other debts, shares and obligations of every kind and character whatsoever shall be preferred over the guarantee shares and shall be paid in full before any distribution is made to the holders of such guarantee stock," and it is also provided therein that: "Dividends may be declared and paid on such shares out of the earnings of the association by the board of directors, to be paid semi-annually or quarterly in *such amounts as the board may decide*. The issue of this stock shall be limited to $50,000.00." (Italics supplied.)

It thus appears that two-thirds of the board of directors must be owners of the "guarantee stock"; that this board has the authority at any monthly meeting to amend the by-laws; that the owners of the other stock, no matter the number or the amount owned by such other stockholders, have no right to make amendments, unless approved by a majority of the board of directors. And, finally, it is apparent that the board of directors, two-thirds of whom are owners of this "guarantee stock," by amendment to the by-laws, can make and prescribe such designations, preferences, restrictions, and qualifications as to assets, dividends, participation, qualifications, and voting powers, in said corporation, as it, the board of directors, may see proper to do. Without further pursuing the subject, if the foregoing does not suffice to show that the backbone and vitals of the corporation, and its ultimate beneficiaries, are represented by the owners of the "guarantee stock," then we confess that it is beyond our ken to comprehend what further power and rights in them would be necessary to constitute the owners of the "guarantee stock" the backbone and vitals of the corporation. But back to the real, vital question. That the transaction between appellee and its stockholders, whereby the latter secured moneys from the association on the pledge of paid-up stock, or on pledge of stock subscribed for at the time of the loans (though not paid for), and mortgages of stockholders' properties, constituted loans, we have not the slightest doubt. Such is the holding, as pointed out in the case of Bor-

rowers' & Investors' Bldg. Association et al. v. Eklund, 190 Ill. 257, 60 N. E. 521, 52 L. R. A. 637, of the courts of last resort of Connecticut, Iowa, Kentucky, Maryland, Nebraska, New York, North Carolina, Pennsylvania, South Carolina, Texas, and West Virginia, and to which we may add Washington, Utah, Tennessee, Oregon, and Idaho.

Supporting the above proposition, see Fidelity Savings Association v. Shea, 6 Idaho, 405, 55 P. 1022; People's Loan & Homestead Association of Joliet v. Keith, 153 Ill. 609, 39 N. E. 1072, 28 L. R. A. 65; Borrowers' & Investors' Building Association v. Eklund, 190 Ill. 257, 60 N. E. 521, 52 L. R. A. 637; Mechanics' & Working Men's Mut. Sav. Bank & Bldg. Ass'n of New Haven v. Wilcox et al., 24 Conn. 147; Burlington Mutual Loan Ass'n v. Heider et al., 55 Iowa, 424, 5 N. W. 578, 7. N. W. 686; Simpson v. Kentucky Citizens' Bldg. & Loan Ass'n, 101 Ky. 496, 41 S. W. 570, 42 S. W. 834; John Armor v. Bank of London, 86 Miss. 658, 39 So. 17; Livingston Loan & Bldg. Ass'n v. Drummond et al., 49 Neb. 200, 68 N. W. 375; Randall v. Nat. Bldg. & Loan, etc., Union, 42 Neb. 809, 60 N. W. 1019, 29 L. R. A. 133; Mills v. Salisbury Bldg. & Loan Ass'n, 75 N. C. 292; Johnson v. Washington Loan Ass'n, 44 Or. 603, 77 P. 872; Philanthropic Bldg. Ass'n v. McKnight, 35 Pa. 470; Pollock v. Carolina Interstate Bldg. & Loan Ass'n, 51 S. C. 420, 29 S. E. 77, 64 Am. St. Rep. 683; Columbia Building & Loan Association v. Bollinger, 12 Rich. Eq. (S. C.) 124, 78 Am. Dec. 463; Jackson v. Anna Lucy Cassidy, 68 Tex. 282, 4 S. W. 541; Bechtold v. Brehm, 26 Pa. 269; C. E. H. Martin v. Nashville Bldg. Ass'n et al., 2 Cold. (Tenn.) 418; McCauley v. Bldg. & Sav. Ass'n, 97 Tenn. 421, 37 S. W. 212, 35 L. R. A. 244, 56 Am. St. Rep. 813; Melville v. American Benefit Bldg. Ass'n et al., 33 Barb. (N. Y.) 103; Thomas F. Howells et al. v. Pacific States Savs. Loan & Bldg. Co., 21 Utah, 45, 60 P. 1025, 81 Am. St. Rep. 659; United States Savs. & Loan Co. v. William Parr, 26 Wash. 115, 66 P. 109; Pfeister v. Wheeling Bldg. Ass'n, 19 W. Va. 676.

That the appellee's principal business was lending money, we are still convinced, whether the transactions are called loans or advances, and that the appellee comes squarely within the provisions of schedule 122 of the Revenue Code (see Gen. Laws 1919, p. 419, § 361, schedule 70) we are equally as firmly convinced. The Lake Case, 69 Ala. 456, decides nothing to the contrary.

The appellee seems to think that the case of Ballard v. Ponchatoula Homestead Ass'n, 137 La. 677, 69 So. 91, is an authority directly in point, supporting its contention that schedule 122 of the Alabama Revenue Code has no application to appellee's business. A careful reading of that case, in connection with the law of Louisiana, statutory and constitutional, will demonstrate that it is not an authority against our holding in this case.

Our recent case of State v. Guaranty Savings Building & Loan Ass'n, 225 Ala. 481, 144 So. 104, 86 A. L. R. 819, while not directly in point on the question now before the court in this case, serves to show that building and loan associations are in fact business corporations, subject to the taxation laws of the state, unless by some valid law they are expressly exempted therefrom. The only persons or institutions, whose principal business is lending money, exempted from the payment of the annual license of $100, are banks and banking institutions. The appellee is not a bank, or a banking institution, and its principal business is lending money, and it, therefore, comes within the class of whom the license is exacted.

The application for rehearing must, therefore, be overruled.

Rehearing denied.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.