JOHN R. SAWTELLE, APPELLANT, v. THE NORTH AMERICAN SAVINGS, LOAN & BUILDING COMPANY, RESPONDENT.

LOAN AND BUILDING COMPANY — STOCK—MORTGAGE — ACTION TO CANCEL.

1. H. subscribed for 17 shares of stock in the North American Savings, Loan & Building Company, a corporation existing under the laws of the state of Minnesota, and doing business in this state. Under his contract and the by-laws of the company, he was to pay $10.20 dues on the shares each month, until such monthly payments, together with the profits arising from interest on loans, premiums, and other sources, apportioned to the shares, would amount to $100 per share, or in the aggregate to $1,700. On these 17 shares H. procured from the corporation a loan of $850, and evidenced the same by a promissory note which he secured by mortgage upon certain real property. At the same time he transferred to the corporation, absolutely, 8½ shares of his stock, as premium for the loan, and, as further security, assigned to it the other 8½ shares. By this contract he was to pay interest monthly on the sum loaned at the rate of six per cent. per annum, and continue to pay the dues and interest until the stock matured and was worth $100 per share, when it was to be received by the corporation in satisfaction of the loan. Afterwards H. sold the mortgaged property to S., who took the same subject to the mortgage, and assumed and agreed to pay the indebtedness secured thereby in the manner therein provided. When S. purchased the property he had no knowledge of the effect of the provisions of the mortgage, was not aware of the absolute assignment of the 8½ shares of the stock, had no interest in the stock, and was not a member of the corporation. The interest and dues were paid until a time when the dues paid aggregated $367.20.

S. then notified the corporation, in accordance with its by-laws, of his intention to pay the loan, and, claiming the right to apply the amount of the dues paid in reduction of the mortgage indebtedness, tendered it the sum of $500, as the balance due. The corporation claimed that only one-half of the amount of such dues could be so applied, because of the absolute assignment of one-half the stock, and refused to accept the tender. S. thereupon brought this action to cancel the mortgage. *Held*, that the $367.20 paid as dues on the stock must be applied in reduction of the debt.

2. Quære: Whether such contracts as H. entered into, although valid under the laws of Minnesota, could be enforced under the laws of this state, as between a member and the corporation; this question not being decided.

(N. 750.   Decided March 22, 1897.)

Appeal from the Second district court, Weber county. Hon. H. H. Rolapp, *Judge*.

Suit by John R. Sawtelle against the North American Savings, Loan and Building Company. Decree for defendant. Plaintiff appeals. *Reversed.*

*H. H. Henderson*, for appellant.

*Richards & Macmillan* and *A. E. Pratt*, for respondent.

The relation of stockholder and borrower are distinct and may exist independently of each other. *Sweeney* v. *Ass'n.*, 26 S. W. 290; *Blakeley* v. *Ass'n.*, 26 S. W. 292; *Association* v. *Furey*, 20 Atl. 890.

The mortgage itself contained sufficient to put him on inquiry. *Lang Syne M. Co.* v. *Ross*, 20 Nev. 137; Sec. 373; Jones on Mtgs., vol. 1; 2 Pom. Eq. Jr., sec. 608.

That the plaintiff elects to pay this loan before ma-

turity does not change the situation.  *Boone* v. *Homestead Loan Ass'n.*, 23 N. Y. S. 203; *Association* v. *Read*, 93 N. Y. 479; *Association* v. *Tascott*, 32 N. E. 377; *Sulivan* v. *Association*, 12 So. 591; *Association* v. *Conover*, 14 N. J. Eq. 223.

BARTCH, J.:

The defendant in this case is a corporation organized and existing under the laws of the state of Minnesota, and is doing business in this state.  It appears from the record that one Charles J. Humphries on December 20, 1891, subscribed for 17 shares of its capital stock, and received a certificate therefor on April 11, 1892, and that the certificate was issued on the condition that the shareholder agreed to pay to the defendant corporation 60 cents monthly for each share, until such monthly payments, together with the profits arising from interest on loans, premiums, and other sources, apportioned to such share, amount to $100.  If a monthly payment was not promptly made when due, a fine of 10 cents per share was to be imposed.  On the 18th of April, 1892, Humphries procured from the corporation a loan of $850 on his 17 shares of stock, making and executing, as evidence thereof, his certain promissory note, and on the same day, as further security for the payment of the sum borrowed, he made, executed, and delivered to the corporation a mortgage on the property mentioned and described in the pleadings herein.  The note was made payable after three years from date thereof, and before nine years from date, and at a time when each share of his stock would be of the value of $100.  The note provided for interest at the rate of 6 per cent per annum, payable on or before the second Tuesday of each month, until each share of the stock would mature and be worth $100; and it contains a pro-

vision that if the maker shall fail to pay the monthly dues on the stock, or payments of interest, for a period of three months, the whole amount of the note shall become due and payable. The mortgage was conditioned for the payment of the $850 and interest thereon at the rate, at the time, and in the manner specified in the note, —containing, among other things, a covenant to pay all fines and the monthly dues on the stock (which amount to $10.20) each month until the stock has matured; and the mortgage also provides that if the maker of the note shall pay or cause to be paid to the corporation all fines and all installments of interest and dues, as and in the manner stipulated in the note, until the stock shall be fully paid and of the value of $100 per share, "and before any of said installments of interest or monthly payments shall have been past due for a period of three months, and shall then surrender said stock to said company in payment of said note, then this deed shall be null and void, otherwise to remain in full force and effect." In furtherance of this scheme, and as a part of the same transaction, and at the same time, Humphries, it appears, transferred absolutely, and without any other consideration, $8\frac{1}{2}$ shares of his stock to the company, as premium for the loan, and assigned to it as collateral security the remaining $8\frac{1}{2}$ shares. On May 25, 1892, Humphries conveyed the real property described in the mortgage to the plaintiff, who took the same subject to the mortgage, and assumed and agreed to pay the indebtedness secured thereby in the manner therein provided. But it appears from the plaintiff's testimony that he did not see the mortgage at that time, that he supposed the mortgage was the same as any other, that he learned from the defendant the manner of making the payments, that he knew nothing about any stock, and that he never saw the

mortgage until he stopped payments. The court found that the plaintiff had no notice of the absolute assignment and transfer to the defendant of the $8\frac{1}{2}$ shares of stock. The interest on the principal sum was paid to the 18th day of April, 1895, amounting to $4.25 per month, and the dues on the stock to the 9th of April, 1895, amounting in the aggregate to $367.20; but thereafter no further payments were made on the stock by the plaintiff, and on May 15th he gave notice to the defendant, in accordance with its by-laws, of his intention to pay the loan. On June 15, 1895, he tendered to the defendant the sum of $500 in payment of the mortgage indebtedness, which tender was refused, and thereupon the plaintiff deposited the $500 with the clerk of the court, for the use and benefit of the defendant, and instituted this suit to compel it to cancel the mortgage, pleading the tender to the association; and the defendant, in addition to its answer to the complaint, filed a cross complaint, in which it asked for a foreclosure of the mortgage.

There are a number of errors assigned on this appeal, but the principal contention between the parties relates to the application of the payments on the stock procured by Humphries. The plaintiff insists that the monthly payments of dues on the stock, aggregating the sum of $367.20, should be applied as payment on the principal, and that the court erred in finding that one-half of it should be credited to the corporation in payment of dues on the stock absolutely assigned to it as a premium, and the other half thereof be applied in reduction of the principal. It is evident, in view of the fact apparent from the record, that this contention must be sustained. The plaintiff owns no stock of the corporation, has no interest in it, and can derive no benefit from it. He merely purchased the property which was mortgaged to the corpo-

ration, and assumed and agreed to pay the sum borrowed, with interest, having no notice that Humphries had transferred 8½ shares of his stock absolutely to the defendant. No doubt, in equity and justice, he is bound to pay the principal sum, with the interest stipulated. But is he bound to do more? Is he bound also to pay dues on stock in which he never had an interest, and assume the burden of a contract of which he had no actual knowledge? We are aware of no rule of equity which would effect such a result, under the facts and circumstances as they appear in this case, and think it quite clear that all the stock payments must be applied as payments on the debt, and that such was the principal purpose for which they were intended; and this even as between a borrowing member and the corporation. It seems difficult to perceive how, in such a case, the absolute assignment of stock as a premium can work a result materially different from its assignment as collateral security, because in either case, under the by-laws of the corporation, if the borrower continues the monthly payment of dues and interest until the stock matures, the stock cancels the indebtedness, and there is precisely the same consequence whether the stock was transferred as a premium or as a pledge. Whatever may be the form by which the stock of a borrowing member is transferred to the corporation, the ultimate object of the monthly payments is the extinguishment of the debt. This is true regardless of the efforts of the agents of such corporations to obscure the relationship of the payments to the principal sum. Whatever may be their ingenious devices to show to the borrower that the loan, in some mysterious way, pays itself, without his knowledge, and that the monthly payments of the dues are a profitable investment in stock, the fact is that the loans are paid by means of the monthly assess-

ments on the stock. This kind of a contract for the loaning of money is not such as to commend itself to the special favor of a court of equity, and while it is not necessary, and is not our intention, to pass upon its validity in this case, under the laws of this state, as between a member of the corporation, still it is important to notice the results which would flow from a specific performance of it, to see whether its literal enforcement, against one who is not a member of the corporation, and, at a time when he undertook to pay the loan, had no knowledge of the effect of its provisions, would be justified upon any principal of equity. Its complete performance would require, and such appears to be the contention of the corporation, the payment of $10.20 dues and $4.25 interest per month, with such fines and penalties as might be assessed, for a period of nine years, or until the 17 shares of stock became worth $1,700; or, in other words, the borrower is to repay the $850 loaned, with 6 per cent interest, payable monthly, and in addition thereto give the corporation a bonus of $850, or in the aggregate $2,159, and then the corporation will call the business square and the transaction at an end. The mere statement of such a proposition shows the contract to be a hard one, if not entirely unconscionable, and therefore we have no hesitancy in declaring that under the facts of this case, as they appear from the record, the $367.20 paid as dues on the stock must be applied in reduction of the debt. *Randall* v. *Protective Union,* 42 Neb. 809; *Rowland* v. *Association,* 115 N. C. 825; *Tilley* v. *Association,* 52 Fed. 618; *Rowland* v. *Association,* 116 N. C. 877; *Robertson* v. *Association,* 69 Am. Dec. 145, 162.

Having reached this conclusion, we do not deem it necessary to consider the cross appeal, nor is it important to discuss any other questions raised in the record. The

cause is reversed and remanded, with directions to the court below to modify the findings and dispose of the case in accordance with this opinion.

ZANE, C. J., and MINER, J., concur.