JOHN H. WHITE, Respondent, *v.* PACIFIC STATES SAVINGS LOAN AND BUILDING CO.. Appellant.

Building and Loan Companies — Action Against — For Accounting — Settlement — Estoppel of Plaintiff.

Where in an action against the building and loan company, it is sought to have a loan declared paid, to have certain stock decreed to plaintiff free from any lien, to require the corporation to reinstate the plaintiff and for an accounting, it appears that plaintiff at one time asked defendant for a statement of the amount that would satisfy its claim, which had grown out of the original transaction with plaintiff's predecessor, that defendant named a sum less than its books showed was actually due it, and plaintiff accepted the offer, paid the money, and received and recorded the release of mortgage in the absence of any showing of fraud or fraudulent concealment of facts, plaintiff is effectually bound by the settlement, regardless of what his legal rights under the contract might otherwise have been.

(Decided November 28, 1899.)

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

Action to have a loan made by defendant corporation to plaintiff declared fully paid; to have certain shares of stock decreed to be the property of the plaintiff, free from any lien on account of the loan or otherwise; to have it adjudged that the stock was fully paid on a certain date; to require defendant to reinstate plaintiff as a stockholder to the extent of said stock, and to have an accounting and judgment for any balance which may be due the plaintiff from the defendant. From a judgment for plaintiff, defendant appealed. *Reversed.*

*Messrs. Booth, Lee & Ritchie,* and *John Croyland, Esq.,* for appellants.

*Messrs. Pierce, Critchlow & Barrette,* for respondent.

BARTCH, C. J.

This suit was brought to have a loan made by the defendant corporation to the plaintiff, declared fully paid; to have certain shares of stock decreed to be the property of the plaintiff, free from any lien on account of the loan or otherwise; to have it adjudged that the stock was fully paid on May 27, 1898; to require the corporation to reinstate the plaintiff as a stockholder to the extent of said stock; and to have an accounting and judgment for any balance which may be due the plaintiff from the defendant.

It appears from the record that in May, 1890, one Ansel N. Badger subscribed for 20 shares of the capital stock of the corporation, and, in November following, subscribed for 10 additional shares. On December 13, 1890, he applied for and obtained a loan of $1,500. To obtain the loan he was required to assign to the corporation absolutely 15 of his shares of stock, and to assign

to it the other 15 shares as security.   Then as additional security he executed and delivered to the company a bond in the sum of $3,000, and a mortgage on certain real property, in the sum of $1,500.   In April, 1892, Badger sold and transferred the mortgaged property, and assigned the 30 shares of stock to the Salt Lake Soap Company, the grantee thereby acquiring all the rights and assuming all the liabilities, under the contract with the defendant company.   The monthly payments of dues on the stock and interest on the loan, under the contract, amounted to $25.50.   These payments were made up to April, 1897.   On September 26, 1898, the Soap Company sold and assigned all its rights, title, and interest in the 30 shares of stock, and all causes of action it might have against the defendant for the cancellation of the stock or any part thereof.

In its answer the defendant set up an accounting and settlement with the Soap Company, respecting the matters alleged as the plaintiff's cause of action.   At the trial the court decreed an accounting, and rendered judgment in favor of the plaintiff for $559.67, and costs.

Among the errors assigned, on this appeal, is one predicated on the ground that the plaintiff's claim had been compromised and settled.   This assignment presents the decisive question in this case.

It is contended on behalf of the appellant that the respondent, because of a settlement of the claim, is precluded from a recovery, and the doctrine of estoppel is invoked.   Upon examination of the evidence we are of the opinion that this contention is sound.

From the correspondence, had between the defendant on one side and the Soap Co. and the respondent on the other, as shown by the letters introduced in evidence, it seems clear that there was a settlement.

It appears that about September 16, 1892, after the Soap Co. had purchased the mortgaged property, it made inquiry of the defendant respecting delinquencies of its grantor in monthly payments and fines, and the defendant in answering the inquiry made a brief statement of the transaction and gave the amount, upon the payment of which the contract would be reinstated.   The amount was paid and the contract reinstated.   The monthly payments were then continued until April, 1897.   On September 11, 1897, the respondent, as president of the Soap Co., wrote defendant inquiring how much money was yet due on the mortgage, to which, on September 14, 1897, the defendant replied:   " If paid at once, this company will release the Badger property under bond and mortgage loan No. 137, for the sum of $255.50 in San Francisco exchange, payable to this company's order."

Thereafter their correspondence on this point was as follows:

SEPTEMBER 17, 1897.

I have your letter of the 14th inst., in which you state that your company will release the Badger property under bond and mortgage loan No. 137, for the sum of $255.50. I beg to say that I will take this matter up at once, and let you know the action of the company.

SALT LAKE SOAP COMPANY,
John H. White, Pres.

FEBRUARY 7, 1898.

*To defendant:*

I herewith hand you San Francisco Exchange for $51, which covers two months dues on the Badger property.

JOHN H. WHITE.

MARCH 4, 1898.

*To defendant:*

Inclosed I hand you San Francisco Exchange for $51 to apply on the mortgage signed by the Salt Lake Soap

Co.   Some time ago I wrote you asking if you would furnish me a statement as to the amount of balance that is due on this loan, and what you would take in settlement of it now.   Kindly give me this information by return, and oblige.                                        John H. White.

San Francisco, March 7, 1898.

*To John H. White:*

Yours with inclosure received.   Account of Badger property, we gave you the figure for settlement, September 14, 1897.   When you desire a release of mortgage, we will send it to Wells, Fargo & Co.'s Bank, with other papers, and instruct it and you what balance is then due; otherwise it is easy of approximation by you from previous figures now in your possession.

April 2, 1898.

*To defendant:*

Inclosed I hand you San Francisco Exchange for $51, part payment on the Badger mortgage and loan.

John H. White.

May 17, 1898.

*To defendant:*

Inclosed I hand you San Francisco Exchange for $51, part payment on the Badger loan and bond, No. 137.   This pretty nearly pays up in full therefor. I ask you to forward to Wells, Fargo & Co. the necessary papers to convey title to John H. White, agent, which will be paid June 1, next.

John H. White, Agent.

San Francisco, May 28, 1898.

*To J. E. Dooly, Cashier Wells, Fargo & Co.'s Bank:*

We inclose papers in our loan No. 137; namely, bond, mortgage, satisfaction of mortgage, abstract of title and

insurance policy with the following instructions, that upon the payment to you of the sum of $51.50 in San Francisco Exchange for our credit and remittance, you may deliver these papers to the party in interest, Mr. John H. White, Agent, 22 West First South Street.

*From the defendant.*

JUNE 7, 1898.

*To the defendant:*

" In payment of proceeds of your collection, Letter date          Your No.          Amount          Exchange Proceeds.    5–2898.    Loan No. 137, John H. White, Agent, $51.50.

We inclose draft No. 28954.    $51.50.

J. E. DOOLY, Cashier."

It is further shown in evidence that the release of the mortgage which was forwarded to Wells, Fargo & Co.'s bank was actually received by plaintiff, and by him placed on record, and that the papers so forwarded were received by him.    The evidence also shows that on September 14, 1897, when the defendant offered to release the mortgage for $255.50, there was due the defendant according to its books the sum of $435.    Further record reference would answer no useful purpose.

That the above correspondence and evidence shows a compromise and settlement of the claim sued for in this case there can be no doubt.    The respondent makes no charge of fraudulent concealment, or even mistake, on the part of the appellant, as to any of the matters which led up to and culminated in the settlement and payment of the money.    He asked the appellant for the amount that would satisfy its claim which had grown out of the original transaction with Badger, and the corporation named a sum which was less than its books showed was actu-

ally due it. The respondent accepted the offer, paid the sum named, received and recorded the release of the mortgaged property, and received the other papers, all with, so far as appears from the record, full knowledge of the whole transaction. He must, therefore, in the absence of any showing of fraud on the part of the corporation, or any fraudulent concealment of facts, be held to be effectually bound by the settlement, regardless of what his legal rights under the contract might otherwise have been.

We are of the opinion that, under the circumstances, the court erred in ignoring the settlement and rendering judgment against the appellant.

Having reached this conclusion, it is not necessary to discuss the other questions presented in the record.

The cause must, therefore, be reversed, and remanded with directions to the court below to set aside its judgment, and enter judgment against the plaintiff for costs.

It is so ordered.

Miner, J., and Baskin, J., concur.