## THOMAS F. HOWELLS AND MARY B. HOWELLS, RESPONDENTS, *v.* PACIFIC STATES SAVINGS, LOAN, AND BUILDING COMPANY, APPELLANT.

BUILDING AND LOAN COMPANY — BORROWER — UNCONSCIONABLE CONTRACT — WHEN TREATED AS SIMPLE LOAN.

> A contract which requires the borrower, from a building and loan company, to pay on a loan of $1500, $18 per month, as premiums on thirty shares of the capital stock of the company, nominally subscribed for by the borrower, until $100 per share on said stock was paid, amounting in the aggregate to three thousand dollars, and to pay on the $1,500 loaned interest at the rate of six per cent per annum, the interest to be paid monthly, until said stock became fully paid up to its par value of $100 per share, and to pay all fines which might become due on the same; and which also provided that upon such payments the thirty shares of stock should be surrendered to the company and the obligation become void, but otherwise to remain in full force, is unconscionable, and in an action to cancel the bond and mortgage constituting the contract, when it appears that the loan and interest thereon have been fully paid, the transaction will be treated as a simple loan and a decree canceling the mortgage and rendering judgment for the amount paid in excess of the loan and interest will not be disturbed.

(Decided February 10, 1900.  Petition for rehearing denied April 17, 1900.  Case appealed to United States Supreme Court.)

Appeal from the Third District Court, Salt Lake County, Hon. Ogden Hiles, *Judge.*

Action to have a certain contract with a building and loan association declared unconscionable; that the loan from said company be declared a simple loan, and that the mortgage securing the same be declared fully paid and canceled.

From a judgment for plaintiff, defendant appealed. *Affirmed.*

*Messrs. Booth, Lee & Ritchie*, and *John Croyland, Esq.*, for appellant.

The rules of law applicable to such transactions are so familiar that we need not enlarge upon them. We cite one authority, 22 Am. & Eng. Ency. of Law, 488–491.

The principles of the doctrine of estoppel *in pais* clearly apply. These also are too well known to require discussion. We cite 11 Am. & Eng. Ency. of Law, 2 ed., 400.

*Messrs. Pierce, Critchlow & Barrette*, for respondents.

The contract is unconscionable, unjust, and inequitable. This court so holds in similar cases. *Sawtelle* v. *North Am. Sav. Co.*, 14 Utah, 449; Fowble case, 17 Utah, 122, reaffirming the doctrine announced in the Sawtelle case.

We refer the court to the following decisions, to wit: *Tilley* v. *Association*, 52 Fed., 618; *Stevens* v. *Association*, 51 Pac. (Idaho), 779; *Rowland* v. *Association*, 18 S. E. (N. C.), 965; *Falls* v. *Association*, 13 South (Ala.), 25; *Randall* v. *Protection Union*, 42 Neb., 809; S. C., 60 N. W., 1019; *Middle States Association* v. *Hagerstown*, 82 Md., 506; S. C., 33 Atlantic, 886; *Randall* v. *Protection Union*, 43 Neb., 876; S. C., 62 N. W., 252; *Strauss* v. *Association*, 23 S. E. (N. C.), 450.

The transaction should be treated as purely a loan, and any overpayment is money had and received by defendant for plaintiff's use. *Tilley* v. *Association, supra; Stevens* v. *Association, supra; Falls* v. *Association, supra;* Sawtelle case, *supra;* Fowble case, *supra; Rowland* v. *Association, supra.*

And a judgment may be recovered against the company for any overpayments, for money had and received by

the company for the use of the borrower.    *Mutual Association* v. *Owings*, 43 S. W. (Ky.), 422.

A stockholder in a loan association has a right to have usurious charges credited on the demand the association has against him.    *Price* v. *Association*, 75 Mo. App., 551.

There was a positive statement that the stock would mature in seven years at most.    This agreement should cancel the mortgage.    *People's B., L. & S. Association* v. *Keller*, 50 S. W., 183; *Williamson* v. *Eastern B. & L. Association of Syracuse, N. Y.*, 32 S. E., 765.

## STATEMENT OF FACTS.

It appears from the evidence and the findings of fact by the trial court that the Pacific States Savings, Loan, and Building Company, appellant, is, and was at the times hereinafter mentioned, a corporation, organized under the laws of the State of California, and engaged in Utah in the business of loaning money on the installment plan; that the said Thomas F. Howells, respondent, being in pressing need of money, applied to the agent of said corporation stationed at Salt Lake City, for a loan of $1,500, and upon being informed by said agent that by subscribing for thirty shares of the stock of the company, and complying with the other requirements, he could obtain such a loan at 6% interest per annum, and that the monthly installments he would be required to pay on his stock subscription would liquidate the indebtedness created by the loan in six and one-half years, or at most in seven years, the respondent, under the direction of said agent, made a written application for said loan, and on the 1st of October, 1891, signed and delivered to said agent the following stipulation, to wit:

"I hereby agree to hold 30 shares of stock in the Pacific States Savings, Loan, and Building Company, and to continue payments of installments on said stock until the same shall mature, or until the loan is otherwise repaid. I also agree to pay said company a bonus of 50 per cent of the stock above referred to, as a consideration for the loan of $1,500 applied for."

On the 13th day of October, 1891, the respondent and his wife executed and delivered to said agent a bond in the sum of $3,000. Among the recitals and obligations of said bond are the following:

"That whereas said Thomas F. Howells has bid in accordance with the by-laws of said company, the sum in United States gold coin of fifteen hundred dollars ($1,500), being the par value of fifteen (15) shares of the capital stock of said company, as and for a premium for the advancement to him by said company in United States gold coin of fifteen hundred dollars ($1,500) by way of anticipation of the value, at their maturity, of thirty (30) shares of the capital stock of said company, now owned by said Thomas F. Howells, and whereas the said company has this day advanced to said Thomas F. Howells the sum in United States gold coin of fifteen hundred dollars ($1,500) in consideration of said premium, and by way of anticipation.

"Now therefore, if the above bounden Thomas F. Howells and Mary B. Howells, or his or her heirs, executors, and administrators, or any of them shall well and truly pay or cause to be paid unto the said company, its successors or assigns, at the office of the said treasurer in the city of San Francisco, on or before seven years from date hereof, the sum in United States gold coin of fifteen hundred dollars ($1,500) and the full amount of the premium above mentioned, if said thirty (30) shares shall have matured and become worth par, or in case said stock has

not matured, then so much of said premium as may have been earned, as hereinafter provided, at the time the whole of the sum advanced, as aforesaid, is repaid, together with interest on fifteen hundred dollars ($1,500) at the rate of six per cent per annum, from the 13th day of October, A. D. 1891, until paid, interest payable monthly; or shall well and truly pay, or cause to be paid, unto said company, its successors or assigns, at the office of its treasurer in said city of San Francisco, the sum of eighteen dollars ($18) on the second Tuesday of each and every month hereafter, as and for the monthly dues on said thirty (30) shares of the capital stock of said company now owned by the said Thomas F. Howells, and by him hereby sold, assigned, transferred, and set over to said company as security for the faithful performance of this bond, and shall also well and truly pay, or cause to be paid, on said second Tuesday of each and every month hereafter, all installments of interest aforesaid, and all fines which may become due on the said stock, until said stock becomes fully paid in and of the par value of one hundred dollars per share, and shall then surrender said stock to said company; then, and in either of such cases, the above obligation to be void, otherwise of full force and virtue."

Respondents also executed and delivered on the same day, to said agent, a mortgage to said corporation, of certain real estate, which contained the following recitals and condition: "This mortgage is given to secure a loan of fifteen hundred dollars ($1,500) made on thirty shares of stock of the said Pacific States Savings, Loan, and Building Company, and on the land and premises herein described, the monthly payments on which said shares of stock amount to eighteen dollars ($18) per month; and the said parties of the first part do further covenant and agree to duly make and pay the said monthly payments of

21 Utah—4

eighteen dollars ($18) per month as they shall become due and payable until said stock becomes fully paid up, together with all interest, fines, and charges that may or shall accrue thereon according to the tenor and effect of a certain bond of even date herewith made, executed, and delivered by said parties of the first part to said party of the second part, which said bond is referred to and hereby made a part hereof, and is secured by this mortgage. Provided, nevertheless, that if the said parties of the first part, their heirs, executors, administrators, and assigns, shall well and truly pay, or cause to be paid, to the said party of the second part, its successors or assigns, at the office of its treasurer in the city of San Francisco, State of California, the sum in United States gold coin of fifteen hundred dollars ($1,500), and interest and premium according to the conditions and terms of said certain bond, on or before seven years from date, with interest on fifteen hundred dollars ($1,500) payable monthly, at the rate of six per cent per annum, until paid; or shall pay, or cause to be paid, to the treasurer of said company all installments of interest which shall become due on said bond, and all fines and monthly payments which shall become due on said stock, until said stock becomes fully paid in and of the value of $100 per share, and before any installments of interest or monthly payments shall have been past due for a period of six months, and shall then surrender said stock to said company in payment of said bond, then this mortgage shall be null and void, otherwise to remain in full force and effect. But if default be made in the payment of said sum or sums of money, or of any installment of interest thereon, or of any monthly payment on said stock for a period of six months after the same shall become due, or any part of either, or in effecting the insurance hereinbefore specified, or in any con-

dition in this mortgage contained, then and in either or any such case the whole principal sum or sums, and the premium secured by this mortgage, and the interest accrued up to the time of such default, shall at the election of said second party, its successors or assigns, without notice, become thereupon due and payable immediately upon said default, and suit may forthwith be brought and a decree be had to sell the said premises.''

A certificate (No. 6199) for thirty shares of the stock of said corporation, bearing date August 25, 1891, was issued, and in which it was certified that Thomas F. Howells is a member of said company, and has subscribed for and is the owner and holder of thirty shares of the stock therein.   This certificate of stock was never delivered to the respondent, but was presented to him by the agent of the company, with the request that the respondent subscribe his name to the printed assignment on the back of said certificate, which was as follows: ''For value received I hereby sell, assign, transfer, and set over all my right, title, and interest in and to the shares of stock mentioned in the within certificate, to the Pacific States Savings, Loan, and Building Company, who agrees to all of the terms and conditions stated in said certificate.''   The terms and conditions of the certificate are similar to those of the bond and mortgage, except that it is provided in said certificate ''that in any town where not less than one hundred shares are held, the company, with the approval of the treasurer, may appoint a collecting agent to receive and receipt for the monthly payments; that the respondent at the request of said agent attached his signature to the printed assignment, and said agent retained the said certificate of stock; that the company, upon the execution and delivery to said agent at Salt Lake City of the instruments aforesaid, loaned to the

respondent $1,500, and designated Wells, Fargo & Company's bank at Salt Lake City, as the place where the monthly dues and fines should be paid; that before the institution of this suit; which is an action to cancel said bond and mortgage, and to recover the amount overpaid by respondent on his indebtedness to said company, the respondent at various times paid to the corporation at the bank of Wells, Fargo & Co., at Salt Lake City, as found by the trial court, on an accounting, $230 more than the principal of the loan and interest thereon at six per cent per annum; that after making such payments the respondent demanded the cancellation of said bond and mortgage, and upon the refusal of said company to cancel the same, the respondent instituted this action.

The answer of said company admitted the execution and delivery of said bond and mortgage; the issuance of 30 shares of stock, and the conveyance of the same by the respondent to the company, and the payments by the respondent at different times of an amount greater than the principal loan and interest thereon at six per cent per annum, and set up a counterclaim based upon said loan, for $689.95, with interest; and $150 counsel fees, and prayed for the foreclosure of said mortgage, and that out of the proceeds of the sale of the real estate so mortgaged, the said sums be paid.

As conclusions of law drawn from the foregoing facts, the trial court found that the transaction was unconscionable, and should not be enforced according to its terms, but that it should be treated as a simple loan; that the mortgage and bond has been fully paid and should be canceled, and that respondent should recover judgment for $230.

A decree and judgment was entered in accordance with said findings.

BASKIN, J., after stating the facts, delivered the opinion of the court.

The appellant claims that the transaction in question is not a naked loan by one stranger to another, but in substance is a dealing in relation to partnership funds, in which the respondent, and the other subscribers to the stock of the company, have a common interest in the concern.

Among the by-laws of the company, introduced in evidence, are the following sections of Article 2:

"Section 1. The shares of stock in this company shall be of four classes; namely, classes A, C, and D of ordinary installment shares, and class B of fully paid-up shares.

Sec. 2. The shares of class A shall be payable in monthly installments of fifty-two (52) cents per share, and an expense fee of eight (8) cents per share, also payable monthly.

The shares of stock class B shall be payable at their par value at the time of subscription therefor, together with the membership fee.

The shares of stock class C shall be payable in monthly installments of sixty cents per share, and in class D in monthly installments of fifty cents per share. The first installment is due and payable on the second Tuesday of the month subsequent to the month in which the application is made; and all subsequent installments shall be due on the same day of the month.

Sec. 3. On all advance payments on shares in classes A, C, and D for not less than six months, the members shall be entitled to receive a discount of five per cent per annum for the average time.

On all shares of stock class B in this company members shall receive interest payable semiannually. Such inter-

est shall be fixed by the board of directors. They may also participate in such profits as the board of directors shall elect; but the interest paid shall be deducted from the profits, and the balance paid at the maturity of the series in which they are entered.

Sec. 4. Whenever any share in classes A, C, and D shall have matured, by monthly payments and profits credited, to the full amount of one hundred dollars, the same may be withdrawn. Such shares not withdrawn thirty days after maturity shall thereafter be considered and entitled as class B shares, and members holding class A shares, after maturity will be required to surrender them to the company and receive therefor class B shares.''

The certificate of the thirty shares of stock was never delivered to the respondent, but was, as recited in the bond, sold, assigned, transferred, and set over to the company as security for the faithful performance of the bond.

By the terms of the bond the respondent was required to continue to pay $18 per month on the thirty shares of stock, together with the monthly interest on the amount borrowed, and all fines assessed, until said shares of stock became fully paid and of the par value of $100, and that then, upon the surrender of said stock to the company, the bond was to become void.

By the terms of the mortgage when said shares of stock became fully paid and of the par value of $100 per share, then upon the delivery of said stock to the company in payment of the bond, which was for the sum of $3,000, said mortgage was to become void. In other words, as stated in the deposition of William Pardy, the secretary of the company, when said stock became matured by such payments all the shares were to be surrendered to the company as premium and payment of the loan.

The maturity of the thirty shares of stock, by such payments, would have closed the transaction and terminated the relations of the respondent to the company, and the payment of the loan with the interest thereon would have been the only benefit received by the respondent, or which he was entitled to receive under the provisions of the bond and mortgage.

Notwithstanding the thirty shares of stock were, in form, subscribed for and a certificate therefor issued in his name, it is evident that the respondent only became a nominal stockholder, and that his actual relation to the company was merely that of a borrower, and not that of a beneficial stockholder.

The real beneficiaries of the company are the holders of class B stock.

There are no provisions, either in the bond or mortgage, which entitle the respondent, in any form, to share in any profits of the company; nor is he entitled, as provided in the fourth Section of Article 2 of the by-laws, upon the maturity and surrender of said shares, to receive in lieu of any of them, any class B shares, but on the contrary he is required to pay the full par value of said stock, and deliver the same to the company in satisfaction of the bond and mortgage, so that said stock, in disregard of the by-laws of the company, is subject to conditions essentially different from those to which any of the classes of stock mentioned in Section 1 of Article 2 of the by-laws, is subject, and does not therefore belong to either of the classes of shares authorized in the by-laws.

Under the construction of the transaction contended for by appellant, the respondent thereby bound himself to pay on the thirty shares of stock $3,000 in monthly installments of $18, and to pay on the $1,500 advanced $7.50 interest each month until the monthly installments

amounted to $3,000. This would occur at the expiration of 166⅓ months. The monthly payments of interest up to that time would amount to $1,250, so that in addition to the fines which may have been incurred, the respondent, in order to liquidate his indebtedness on the loan, according to such construction, would have to pay $4,250, and in doing so the respondent would have paid at the end of six years, eleven and one-third months from the date of the transaction, in monthly installments of $18, the $1,500 loaned, and the monthly installments of interest thereon provided for, amounting to $625, and in all to a sum of $2,125. Yet, notwithstanding this, under the construction contended for, he would have been obliged to still continue to pay the monthly installments of $18, and interest on the sum loaned, until twice the sum of $2,125 was paid. The whole thus required makes the amount of $4,250, which sum is equivalent to the sum loaned ($1,500) with interest thereon at the rate of twenty-six per cent per annum from the date of the transaction up to the expiration of the time, six years, eleven and one-third months, when the monthly payments required would have equaled the loan and the monthly interest which was to accrue during said period.

Such a transaction is unconscionable.

Lord Hardwicke, in the celebrated case of *Chesterfield* v. *Janssen*, 2 Ves., 155, stated that fraud which is *dolus malus* "may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other; which are inequitable and unconscientious bargains." 1 Story's Eq. Jur., Sec. 188.

It is apparent from the facts disclosed by the record that the bargain in this case belongs to the class which Lord Hardwicke designated as unconscientious.

It is evident that the transaction in regard to the 30 shares of stock was simply a cunning device to obscure the real transaction, and induce the respondent to believe that by subscribing for the stock he would derive a benefit other than the advancement of the sum loaned. Had the matter been presented in a direct and simple form, there can be little doubt but that the offered loan would have been declined.

In the case of *People's Building Association* v. *Fowble*, 17 Utah, 122, and *Sawtelle* v. *North American Savings Co.*, 14 Utah, 443, this court held that a grantee, who purchases mortgaged premises and assumes and agrees to pay the indebtedness, upon a loan like the one involved in this case, secured by the mortgage, "has a right to have the stock payments, whether paid as dues or premiums credited on the loan, and applied in reduction of the debt." In these cases the grantee in assuming the indebtedness of the borrower became obligated to make the same payments which the borrower would have been compelled to make in order to liquidate his indebtedness, had no conveyance of the mortgaged premises and assumption of the indebtedness been made. It follows that any payment which reduces such indebtedness in favor of such grantee must also reduce the same in favor of the borrower.

In view of the principles announced in these cases and cases cited therein, the peculiar facts disclosed by the record, and the unconscionable character of the stipulations of the bond and mortgage, the decree rendered is correct.

It is therefore ordered that the decree of the court below be affirmed with costs.

Bartch, C. J., and Miner, J., concur.