WESTERN LOAN AND SAVINGS COMPANY, a Cor-
poration, Appellant, v. M. H. DESKY and GERTIE
DESKY, his Wife, Respondents.

**No. 1336.**   (68 Pac. 141.)

1. **Building and Loan Associations: Loan: Settlement:**
   **Validity: Right to go Behind.**
   Defendant executed a note to a building and loan association, which
      he secured by a mortgage on land and by assignment of the
      stock forming the basis of the loan.   Thereafter the associa-
      tion made a transfer of its business to the plaintiff association,
      according to which plaintiff was to take up the transferred
      stock and substitute its own.   Plaintiff issued a new certificate
      to defendant, who thereafter paid his dues to plaintiff.   There-
      after plaintiff and defendant had a purported settlement,
      whereby plaintiff gave defendant a certain credit on his note,
      and defendant indorsed upon his original stock certificate a re-

lease of all claims thereunder and a surrender thereof for can-
cellation. *Held*, in a suit to foreclose the mortgage, that the
original certificate having been cancelled by the terms of its
transfer to plaintiff, and the court having found that defendant
at the time of the settlement had more than paid his loan, and
that such settlement was without consideration, the transac-
tion did not constitute a settlement behind which defendant
could not go.

**2. Same.**

Under the evidence it could not be assumed or held that defendant
intended to release, or understood that he was releasing, all
claims against plaintiff existing prior to the date of the set-
tlement, by virtue of the new certificate of stock which he held
in the plaintiff association, and which he had in his possession
at the time.

**3. Same: Amount Due: Computation: Harmless Error.**

Any error that may have been committed in admitting computations
of the amount due between the parties made according to the
rule of partial payments, such computations not being adopted
by the court, was harmless.

**4. Same: Finding: Justified by Evidence.**

A finding that the issuing of the original stock, the making of the
note and mortgage, and the issuing by plaintiff of the lieu stock
were all in fact one transaction, was justified by the evidence.

**5. Same.**

A building and loan borrower's note was made payable at the end
of a specified period, and provided for the payment of certain
monthly dues in addition to the principal sum loaned. The
association's prospectus to borrowers based the total cost of
loans upon the payment of regular monthly dues for the same
period, and indicated by comparison with other kinds of loans
that at the end of that period the loans would be satisfied.
*Held*, in a suit to foreclose a mortgage given to secure the loan,
that a finding that the monthly payment of dues for the full
specified period discharged the defendant's obligation, reached
by applying such dues on the principal of the debt, was justified
by the evidence.

**6. 4. Same: "Loan Dues": Application: Not Interest.**

Although the by-laws of the association provided that borrowers
should pay upon their stock in addition to and independently
of their regular monthly installments a certain amount as
"loan dues," such loan dues, being characterized as payments

upon stock, could not be treated as interest; and hence a finding that the excess of the aggregated monthly payments for the specified period over the principal sum of the loan constituted the only interest to which the association was entitled was justified by the evidence.[1]

(Decided March 7, 1902.)

Appeal from the Third District Court, Salt Lake County— *Hon. W. C. Hall,* Judge.

Action to foreclose a mortgage. From a judgment in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*C. S. Price, Esq.,* for appellant.

The court erred in permitting the defendant to go behind the settlement of 1898, and in admitting evidence of transactions prior to said settlement, for the reasons:

1. That at the time of the said settlement, June 28, 1898, the National Building and Loan Association had become insolvent and was in a failing condition and that its members, borrowing and non-borrowing alike, were required to bear the burdens of the losses of the company proportionately, just as they would both have been entitled to share in the earnings of the company had it been a successful concern. Betz v. People's Building and Savings Association, 22 Utah 151, 61 Pac. 334; Patterson v. Albany Building and Loan Association, 63 Ga. 373; Hale v. Cairns, North Dakota, 44 L. R. A. 261.

---

[1]Sawtelle v. Building Co., 14 Utah 443; 48 Pac. 211; Hale v. Thomas, 20 Utah 426; 56 Pac. 241;. Association v. Fowble, 17 Utah 122; 53 Pac. 999; Howells v. Building Co., 21 Utah 45; 60 Pac. 1025; 81 Am. St. Rep. 659; Association v. Kroeger, 22 Utah 134; 61 Pac. 559; Snyder v. Association, 23 Utah 291; 64 Pac. 870.

The value of a member's stock in a failing concern, after deducting all losses and expenses, must be approximated, and the value so ascertained be allowed as an offset upon his mortgage debt, and the balance of said debt paid. Endlich on Building Associations, 531; Building Association v. Goodrich, 48 Ga. 445.

2. That said settlement was by its terms final and complete. There is no suspicion of concealment or fraud in the settlement. In the case of White v. Pacific Savings, Loan & Building Association, 21 Utah 23, (59 Pac. 527), this honorable court held that such a settlement effectually bound the parties to it, and "regardless of what his legal rights under the contract might otherwise have been."

The fifth error relied upon is found in the thirteenth finding of fact and the eleventh conclusion of law, wherein the conclusion is reached that the words "$14 loan dues" used in said note of said defendant, Desky, to the National Building and Loan Association, did not and could not mean "interest."

The term "loan dues," in itself, means nothing more nor less than compensation for the loan, in other words "interest." Not only is this a reasonable interpretation of the term itself, but the evidence in the case can lead to no other logical conclusion. The more reasonable does this contention appear when it is noted that no other interest is reserved in the note.

The sixth assignment of error relied upon involves a patent inconsistency between the twelfth finding of fact and the fifth conclusion of law of the court.

If, as the court finds in its twelfth finding of fact, the only interest that the plaintiff was entitled to receive and retain, was the excess of monthly payments over the principal sum, how can the court in its fifth conclusion of law, give the defendant judgment for that amount so paid by him in excess of the principal sum?

The appellant is at a loss to ascertain what interest the court has awarded plaintiff, since what the court says in finding twelve "constitutes the only interest" plaintiff was entitled to receive is awarded to the defendant the "amount overpaid."

Inconsistencies between the findings of facts and conclusions of law is sufficient to warrant a reversal of the judgment. Stover v. Stover, 24 Utah 92, 66 Pac. 766.

*Charles C. Dey, Esq.*, and *W. H. Bramel, Esq.*, for respondents.

In this case all the money paid by Desky was paid as dues upon stock, which, by seven years' payment, to-wit, to April 29, 1898, did discharge the loan. That is to say, Desky was charged with the payment of sixty cents per share per month on his stock for the first three months, and $1.60 per share per month on his stock for the balance of the seven-year period, to-wit, until the maturity of the note.

This court has decided, that all payments upon stock are to be applied on repayment of the loan. There can be no question upon this proposition. Stillwell v. The People's B. L. & S. Ass'n, 19 Utah 257; Hale v. Thomas, 20 Utah 426; People's B. L. & S. Co. v. Fowble, 17 Utah 122; Sawtelle v. N. Amer. Sav. Co., 14 Utah 443; White v. Pac. States, etc., Co., 21 Utah 23; Howells v. Pac. States, etc., Co., 21 Utah 45; Betz v. People's B. L. & S. Co., 22 Utah 149; People's B. L. & S. Co. v. Kroeger, 22 Utah 134; Snyder v. Fidelity Sav. Ass'n. (Utah), 64 Pac. 870.

### STATEMENT OF FACTS.

This action was brought to foreclose a mortgage or trust deed which the defendant and wife had executed to the National Building and Loan Association on certain real estate as security for a loan, and to have the property sold, and

the proceeds applied in payment of the debt; the trust deed having been transferred to the plaintiff. The amount claimed to be due was $1,288.73 and interest. From the record it appears that both the Western Loan and Savings Company and the National Building and Loan Association are corporations organized under the laws of Utah. In March, 1891, for the purpose of obtaining a loan from the National Building and Loan Association, the defendant subscribed for fourteen shares of its common stock, which were issued to him, and, after making three monthly payments of $8.40 each thereon, pursuant to the by-laws and regulations of the association, borrowed and received, on June 30, 1891, from the association, the sum of $1,400. At the same time he executed his promissory note, as follows: "$1,400. Salt Lake City, Utah, June, 1891. On or before April 29, 1898, I promise to pay to the order of the National Building and Loan Association, of Salt Lake City, $1,400 principal, together with a monthly payment of $14 loan dues; also all installments and charges upon fourteen shares of company stock of the National Building and Loan Association at Salt Lake City, evidenced by certificate No. 1232, assigned herewith as additional collateral security for the payment of said principal, installments, and charges, as provided in the by-laws of said association. Said monthly payments to be made at the home office of said association, in Salt Lake City, Utah, on or before the last Tuesday in each and every month. M. H. Desky." On the same day as further security for the loan, the defendant and his wife executed and delivered to the association the trust deed sought to be foreclosed herein, and at the same time the defendant also assigned his stock to the association as collateral security. Thereafter, and until June, 1898, he paid on the stock, to the association and its successor, sixty cents dues and one dollar loan dues per month, or $22.40 monthly. In June, 1893, the National Building and Loan Association transferred its assets and obli-

gations, including the obligation of the defendant, to the plaintiff, and the business of that association thereupon became merged with, and was thereafter conducted and carried on by, the plaintiff, the Western Loan and Savings Company. After such transfer the defendant paid all dues to the latter company. When the defendant obtained the loan the by-laws of the association, *inter alia*, provided: "All members obtaining loans shall pay upon their stock, independent of their regular monthly installments, one dollar per share per month, as loan dues." Art. 17, section 2. And in article 18, section 2: "When a loan has been granted, the borrower shall pay monthly in addition to the regular monthly payments on stock, the sum of one dollar per month loan dues."

At that time the association's representations to borrowers, as appears from its prospectus, were as follows:

"The plan of making loans by this association is far more equitable and much more simple than the usual plan of similar associations, for the reason that the association loans the full and actual face or ultimate value of the stock, which forms the base of the loan. The rate of interest is fixed at six per centum per annum, and to obtain a loan the intended borrower must pay a premium (not less than fifty cents), payable monthly, together with interest; and, if he is the highest bidder of the premium, and the security offered is satisfactory, the money is awarded to him at the regular stated meeting of the directors (see article 13, sections 1 and 2 of the by-laws), the borrower's stock participating in the profits of the association. The actual amount of money paid on any loan is less than the same loan can be obtained from a capitalist, as shown in the annexed illustration:

### ILLUSTRATION.

Suppose a man has ten shares of stock, on which he wants to obtain a loan. He bids for it, and it is awarded to him, at fifty cents a share per month premium.

Cash borrowed on ten shares........................ $1,000

24 Utah—23

Western Loan & Sav. Co. v. Desky.

| | | |
|---|---|---:|
| Payments per month and charges................ | $ 6 00 | |
| Interest per month at six per cent per annum... | 5 00 | |
| Premium, fifty cents per month, on ten shares... | 5 00 | |
| Payments per month, each ................. | $16 00 | |
| Cost in seven years, interest, premium, and principal.... | | $1,344 |
| Comparing this with a loan from a capitalist at eight per cent: | | |
| Cash loan .... ............................:.... | | $1,000 |
| Eight per cent interest for seven years ......... | 560 | |
| Total cost in seven years for loan of one thousand dollars from capitalist ...................... | | $1,560 |
| Interest in favor of this association in seven years...... | | $ 216 |

"A loan may be repaid or reduced in installments of one hundred dollars at any time by giving thirty days' notice, at a stated meeting of the directors. The above will show how great an advantage is derived by borrowing of this association instead of elsewhere. A borrower must agree to pay seventy-five cents per share per month premium, and then pays less than he would to a capitalist from whom he might borrow for eight per cent. per annum."

The association's plan of operation, as shown by one of the exhibits in evidence, was as follows:

"The funds of this association will be loaned on the first approved application of a shareholder. No member can make an application for a loan until said applicant has been a member three months, and has paid three monthly installments on same. Loans on real estate must be secured by first mortgages, and can not exceed fifty per cent. of the appraised value of the property. This association differs from others, in that no premiums are asked, no bidding or carrying a surplus of stock required, but an installment, fixed and definite; thus letting a borrower know beforehand exactly what his payments are to be. The plan for making loans adopted by this association is known as the 'installment plan,' a charge of one dollar per share per month being made on stock after it is borrowed on, and for actual cost see table below.

"An illustration showing the cost of $1,000 loan to a class A or common stock member:

| | | |
|---|---:|---:|
| Life membership certificate, ten shares...........$ | 11 | 00 |
| Three monthly payments, $6 each ................ | 18 | 00 |
| Eighty-one months' payments, of $16.............. | 1,296 | 00 |
| Total cost in seven years ....................... $ | 1,325 | 00 |
| Deduct amount of loan .......................... | 1,000 | 00 |
| Total interest, seven years ..................... $ | 325 | 00 |

"The above illustration is based on the assumption that borrowing members continue their loans until the maturity of their shares. If loans are repaid before maturity, the rate of interest will be greater, such rate being determined by the dividends apportioned to the stock."

It appears that by the terms of the transfer and merger, or consolidation, the plaintiff was required to take up the stock of the several stockholders of the National Building and Loan Association and issue in lieu thereof its stock of equal par value. The defendant's fourteen shares, which had been transferred as security, passed, upon said merger, into the possession of the plaintiff, and still remain in its possession, and in lieu thereof the plaintiff sent the defendant a certificate for fourteen shares of its stock, which certificate, upon the trial of this cause, was surrendered by him to the plaintiff. After the merger the defendant paid dues and loan dues at the rate of $22.40 per month until and including June, 1898, on which date the plaintiff indorsed on the note a payment of $111.27, and obtained the defendant's indorsement on the certificate of stock issued to him by the National Building and Loan Association, and which had been assigned to that association, as follows: "For and in consideration of the sum of $111.27, credited on my note in favor of the National Building and Loan Association, I hereby release all claims under the within certificate of stock, and surrender the same for cancellation. M. H. Desky. Salt Lake

City, Utah, June 28, 1898." Thereafter, and until July, 1900, the defendant paid to the plaintiff, as dues and loan dues upon the stock, the sum of $21.30 per month. Whether, at the time of the merger, the National Building and Loan Association was insolvent does not appear, although there is evidence tending to show that it was in a failing condition. In July, 1900, the defendant stopped the payment of dues and loan dues, claiming that the loan was more than paid, but the plaintiff, upon demand made, refused to cancel and discharge the deed of trust, and afterwards instituted this suit. At the trial the court found that the defendant had overpaid his indebtedness; that with and including the payment made on April 20, 1898, he had fully paid and discharged his obligation, evidenced by the note, trust deed, and stock; and that there was due the defendant from the plaintiff, because of payments made thereafter, the sum of $577.30, and $92.36 interest. The court entered a decree accordingly, dismissed the complaint, and ordered that the trust deed be cancelled and discharged. From this decree the plaintiff appealed.

BARTCH, J., after stating the case as above, delivered the opinion of the court.

The appellant insists that the court erred in permitting the defendant to go behind the settlement of June 28, 1898, and admitting evidence of transactions prior thereto. This point refers to the indorsement by the respondent on the certificate issued to him by the National Building and Loan Association, representing fourteen shares of its common stock, which indorsement was signed by the respondent on June 28, 1898, and states that for the consideration of the sum of $111.27, credited on his note, he releases all claims under the certificate, and surrenders the same for cancellation. It is urged that this indorsement constitutes a complete and final settlement of the transactions between the parties up to that date. The facts and circumstances in evidence,

however, negative such contention. Long prior to the date of the indorsement the certificate in question had been transferred and surrendered to the plaintiff for cancellation, and it had issued another certificate to the respondent in lieu thereof, which, at the time of the indorsement, he had in his possession. When the indorsement was made the indorser's obligation had already been overpaid, and he was then entitled to have the trust deed cancelled. Such is the finding of the court, and its finding appears to be supported by the evidence. The court also found that the said credit and release were without consideration, and that the act of the plaintiff, as trustee of the National Building and Loan Association, in procuring, after the loan had been fully paid and satisfied, the release and making the credit, was void, and we cannot say that such finding is not warranted by the proof. Nor can we assume or hold, under the evidence in this case, that by that indorsement the respondent intended to or understood that he was also releasing any and all claims he had against the plaintiff prior to that date, by virtue of the certificate which he then had in his own possession. Especially is this so when it is considered that at the time of the indorsement the respondent had already paid over $1,900 because of the loan. It is true there is some evidence tending to show that the National Building and Loan Association was at the time of the transfer in a failing condition, but that it was insolvent does not appear. It is shown, however, that the transferee continued the business. Undoubtedly, when a building association sustains losses, each member thereof must bear his proportionate share; but just what the losses, if any, were in this case, or whether they were properly distributed, is not established by proof, and therefore no question as to losses can avail the appellant, to sustain the validity of the indorsement. The case of Betz v. Association, 22 Utah 149, 61 Pac. 334, is not in point in this case, because the material facts in that case differ from those in this. Likewise as to the case of

White v. Building Co., 21 Utah 23, 59 Pac. 527. We are of the opinion that the court properly admitted the evidence in question.

It is further urged that the judgment ought to be reversed because of the admission in evidence, over the objection of the plaintiff, of the computations of the witness Meloy. The witness made the computations according to the rule of partial payments, and it is insisted that the rule does not apply to a case like this. The computations, however, were evidently not adopted by the court, and therefore, if it be admitted that such rule does not apply to this case, the error, if one was committed, was harmless. According to the computations, the amount due the respondent was more than the amount allowed by the decree. In arriving at the amount due the respondent, the court, it seems, adopted the plan set forth in the appellant's regulations in force and representations made at the time of the loan, and according to which the transaction was to end at the maturity of the note, April 29, 1898. This is indicated by the twelfth finding of fact, which reads: "The court finds that the issuing of stock, the making of the note and mortgage, the issuing by plaintiff of lieu stock, were all in fact one transaction to secure the repayment of the loan, and that the monthly payment of dues and loan dues upon the stock up to the maturity of the note fully discharged and paid the said obligation of the defendant M. H. Desky; that the excess in said monthly payments over the principal sum constituted the only interest which the said National Building and Loan Association and said plaintiff, Western Loan and Savings Company, were entitled to receive or retain." This finding is clearly in accordance with the declared plan and object of the appellant, as shown by its bylaws, regulations, prospectus, and representations; and, while it is contended that such finding is inconsistent with the fifth conclusion of law, we think such contention is not well founded. The facts so found appear to be legitimate

deductions from the evidence.   Nowhere in the findings does it appear that the court resorted to the rule of partial payments in determining the amount due the respondent.   The point here under consideration, as appears from the record, presents no ground for reversal.

Error is also predicated upon the thirteenth finding of fact, where the court found "that 'loan dues,' as used in said note and mortgage, did not and does not mean 'monthly interest.'"   We do not, in view of our conclusion in this case, think an extended discussion of this point important.   Suffice it to say that we deem the finding justified by the evidence.   It is in harmony with the by-laws and the appellant's own plan of operation.   Loan dues are there characterized as payments upon the stock—as a charge upon the stock—and only the excess of such payments is regarded as interest or allowance for the loan.   The appellant must be held bound by its by-laws, regulations, and by the representations it made to the public.   This court has frequently decided that all payments made as dues upon the stock of such a concern must be applied in reduction of the debt. Sawtelle v. Building Co., 14 Utah 443, 48 Pac. 211; Association v. Fowble, 17 Utah 122, 53 Pac. 999; Hale v. Thomas, 20 Utah 426, 59 Pac. 241; Howells v. Building Co., 21 Utah 45, 60 Pac. 1025; Association v. Kroeger, 22 Utah 134, 61 Pac. 559; Snyder v. Association, 23 Utah 291, 64 Pac. 870.

It is not deemed important to discuss any of the other questions presented.   We find no reversible error in the record.

The judgment is affirmed, with costs.

MINER, C. J., concurs.   BASKIN, J., concurs in the judgment.